THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v.
MICHAEL A. PHILIPPI, Defendant-Appellee.

Second District No. 2—88—0752

Opinion filed July 28, 1989.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers and Colleen Griffin, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Donald J. Ramsell, of Ramsell & Associates, of Schaumburg, for appellee.

JUSTICE WOODWARD delivered the opinion of the court:

In this appeal, the State raises one issue, namely, that the trial court's decision to take judicial notice of the testimony of two non-party witnesses given in an unrelated case was manifestly erroneous.

On February 26, 1988, defendant Michael Philippi was charged with the offense of driving under the influence of alcohol in violation of sections 11—501(a)(1) and 11—501(a)(2) of the Illinois Vehicle Code (Ill. Rev. Stat. 1987, ch. 95½, pars. 11—501(a)(1), (a)(2)). Defendant submitted to breathalyzer testing which disclosed a blood-alcohol concentration of .21. Defendant filed a petition to rescind the revocation of his driver's license, and at the hearing on said petition, defendant's attorney sought to introduce evidence that the results of the breathalyzer test did not comply with the standards and procedures for testing alcohol and other drugs promulgated by the Illinois Department of Public Health (Department) and that the simulator solution in this case was improperly assayed (tested).

At the hearing on the petition to rescind, defendant filed a motion *in limine*, and in support of said motion, defendant sought to introduce several exhibits into evidence. Defendant's exhibit No. 1 was a certified public record of the Department for the February 10, 1988, accuracy check by the Department's inspector John Dorko of Intoxylizer 3000, serial No. 4073, the breathalyzer used by the Bloomingdale police department in the instant case. Defendant's exhibit No. 2 was a copy of an accuracy check performed by the same inspector on the same instrument performed on March 3, 1988. Defendant's exhibit No. 3 was the the Department's certificate of analysis for testing solution lot No. 87—134, which was used to test the instant breathalyzer on February 10, 1988, and March 3, 1988. Defendant's exhibit No. 4 was the transcript of the testimony of two witnesses, John Dorko and Dr. Daniel Brown, given on May 24, 1988, in the case of People v. Hurmuz, No. 88—TR—39055 (Cir. Ct. Du Page County). Defendant's exhibit No. 5 was a photocopy of the breath ticket issued by the Bloomingdale police department to the instant defendant on February 26, 1988.

In People v. Hurmuz, following an order of summary suspension, the defendant therein, at a hearing on summary suspension, called two witnesses, Mr. John Dorko and Dr. Daniel Brown. (It should be noted here that the same judge presided over both People v. Hurmuz and the instant case. Also, the prosecuting attorney and defense coun-

sel were the same in both cases.) Defendant's exhibit No. 4 was a certified copy of the transcript of the testimony of John Dorko and Dr. David Brown, given in People v. Hurmuz. Mr. Dorko, an inspector with the Department, testified that on March 17, 1988, and April 14, 1988, he certified the Glendale Heights Breathalyzer 2000 using as the simulator solution, batch 87—134 (the same solution used to certify the instant breathalyzer). Mr. Dorko testified that he obtained simulator solution batch 87—134 from the Department in Chicago. He then stated that in certifying the Glendale Heights breathalyzer, he placed the solution in the simulator (a component of the breathalyzer) at a controlled temperature. The simulator solution was then blown through the machine in order to obtain a reading of .10, plus or minus a hundredth. Mr. Dorko also testified that if the simulator solution he used to test the machine was not accurate, the machine could not be appropriately certified.

Dr. Daniel Brown testified in People v. Hurmuz that he is the acting chief toxicologist for the Illinois State Police, Bureau of Forensic Sciences. He stated that he has been involved in the testing of alcohol for over 20 years, and that he is certified by the Department to analyze blood and urine for the presence of alcohol and other drugs. Dr. Brown testified that his department is currently involved in doing chemical analysis of blood and urine specimens for the presence of drugs and alcohol. Dr. Brown stated that the simulator is a device used to create an alcohol and air solution of known concentration. A solution is placed inside the simulator, and said solution is used to produce an alcohol air volume of known alcohol concentration for calibrating the breathalyzer.

Dr. Brown further testified in People v. Hurmuz that a gas chromatograph (otherwise known as a breathalyzer) is an electronic instrument that is used to do analysis on a variety of substances, including measuring the alcohol in blood. He testified that if the gas chromatograph were properly calibrated, the simulator solution would register a reading of .121 grams of alcohol on the gas chromatograph. He admitted that the Department's certificate of analysis for batch 87—134 stated that the alcohol concentration was .10 rather than .121. Later in Dr. Brown's direct examination, the following colloquy took place.

"Q. In your opinion, is a gas chromatograph designed to estimate or is it designed to read accurately?

A. It's designed to read accurately.

Q. And in your opinion, as the document [certificate of analysis] reads, isn't it in fact true that scientifically it's incorrect.

A. Yes, sir. That's correct."

In defendant's redirect, the following colloquy took place.

"Q. So that document [certificate of analysis] does not have the proper number in it that a gas chromatograph would record on a .10 simulator solution, correct?

A. If the instrument was properly calibrated, that is correct, sir. It is not proper.

Q. And it's your testimony that the Department of Public Health put down a number different than what the gas chromatograph in fact should have recorded in this case, correct?

A. Either that or the instrument was not properly calibrated, sir."

The court in People v. Hurmuz found that defendant met his burden of demonstrating a defect in the breathalyzer evidence presented by the State as to batch 87—134 and vacated the order granting summary suspension.

In the proceeding in this case, by using the People v. Hurmuz testimony of Dr. Daniel Brown and John Dorko and the other defense exhibits, defendant sought to show that: (1) the same simulator solution (batch 87—134) was used both here and in the Hurmuz case, (2) the simulator solution used to test the breathalyzer which measured defendant's blood-alcohol level was defective, and (3) the breathalyzer was tested improperly in violation of the standards and procedures by the instant Department. Thus, defendant argued that the results of the breathalyzer test should be excluded.

■■ The defendant first contends that the State failed to properly object to defendant's exhibit No. 4 and failed to specify particular grounds of objection thereto. In reference to the foregoing, the record at the time defendant's exhibit No. 4 was offered in evidence contains approximately six pages, portions of which show the following statements made by the assistant State's Attorney:

"Technically, we have no objection to entering Exhibit No. 4 in evidence. However, *we wish to reserve our right to argue for what purpose its introduction would be proper or improper.*" (Emphasis added.)

"Here, Dr. Brown's testimony was in the nature of opinion testimony and I don't believe it's proper for this court to take judicial notice of opinion testimony, your Honor."

Thereafter, a part of page 20 of defendant's exhibit No. 4 was read, and thereafter, the assistant State's Attorney said:

"Both those questions are, by design of the question themselves, they are eliciting opinion testimony. I don't believe that's proper."

"I cannot at this point in time represent how the testimony may or may not be different than it was on the previous occasion, Judge, but as I think you have made reference to in your comments, I think we are entitled to do that, your Honor, just as much as the State is not allowed to ask the Court to take judicial notice of certifications and other things just because they have been litigated in other cases, similar cases.

I don't think the defense has that ability to either and I don't think the State has to be required to forfeit the right to have live testimony in these cases, your Honor."

Also, it is noted that the court made certain remarks in reference to defendant's exhibit No. 4 during the discussion with counsel as follows:

"THE COURT: Mr. State's Attorney, I agree with your argument that these were opinions of the witness and they are not in the realm of, you know, me taking judicial notice about the sun and moon and stars and other scientific things, but to me, I don't understand why the State's Attorney would want to pursue something and cause the defendant to subpoena in these witnesses again and take up the time of public officials.

\* \* \*

If we go in and have these witnesses appear before the Court again, I just don't see the fairness of the State in requiring the defendant to maybe meet the technicality of the criminal court rules, where the facts apparently are not in dispute.

\* \* \*

THE COURT: All right. It's defendant's motion and I look upon the Exhibit 4 as being sworn testimony that was taken before this Court in this courtroom before the same two attorneys that are before me now. So it just strikes me that even though we have a technical non-compliance with some of the court rules, we live in a world of change and maybe it's time to test this, so the documents will be admitted.

\* \* \*

THE COURT: In light of the foregoing parts of the record, this Court holds that proper objection was made by the State to the admissions of the defendant's Exhibit No. 4."

The court below took judicial notice of the testimony of John Dorko and Dr. Daniel Brown in People v. Hurmuz and admitted defendant's other exhibits into evidence and granted defendant's motion *in limine* to exclude the results of the breathalyzer test. Thereafter, the court granted the relief defendant sought, namely, revocation

of the suspension of his license on the basis that the breathalyzer evidence was defective.

In light of the parts of the record quoted above, this court holds that proper objection was made by the State to the admission of defendant's exhibit No. 4. (See *Dear v. Chicago Transit Authority* (1979), 72 Ill. App. 3d 729, 734.) Therefore, the issue as heretofore stated is whether or not the court may take judicial notice of testimony of nonparty witnesses given in an unrelated case.

■■ The law applicable in this case is succinctly stated in *George v. Moorhead* (1948), 399 Ill. 497, 500, as follows:

> "The general rule, which seems to be supported by all of the authorities, is that the evidence given by a witness in a previous action is relevant for the purpose of proving the matters stated in a subsequent proceeding, or in a later stage of the same proceeding, *when the witness is dead, or is insane, or is so ill that he will probably never be able to travel, or is kept out of the way by the adverse party,* and in some States when he is out of the jurisdiction of this court, provided there be identity of parties and issues in the former proceeding and the later." (Emphasis added.)

The court stated further:

> "The rule would, of course, exclude the former testimony of *a witness still alive and capable of being subpoenaed as a witness* * * *." (Emphasis added.) *George,* 399 Ill. at 501.

In *People v. Brown* (1988), 177 Ill. App. 3d 671, the defendant was charged with DUI. The arresting officer testified at a hearing to rescind the summary suspension of defendant's driver's license. After this hearing, the defendant moved to suppress the evidence at the DUI hearing, and the court took judicial notice of the arresting officer's testimony given in the hearing for summary suspension of license. On appeal, the court held it was error to take judicial notice of the testimony if there was no showing that the officer could not have been subpoenaed. The following portion of the court's decision quoting from *In re Gonder* (1986), 149 Ill. App. 3d 627, addresses the concerns of the trial judge in this case in reference to his remarks about recalling witnesses:

> "In taking judicial notice of the record of prior proceedings in this cause, the circuit court apparently sought to expedite matters and eliminate the need to recall nonparty witnesses. However, this procedure also skirted the normal rule that prior testimony is hearsay that may be used as substantive evidence only when the witness is unavailable by death, illness or other

such cause." 149 Ill. App. 3d at 629.

■ Since defendant's exhibit No. 4 should not have been admitted in evidence on the basis of judicial notice, the order of the circuit court must be vacated. This cause is remanded for further proceedings including the presentation of such further evidence as may properly be admissible.

Judgment vacated and remanded with directions.

LINDBERG and DUNN, JJ., concur.