# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**People v. Rubalcava**, 2013 IL App (2d) 120396

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ARTEMIO RUBALCAVA, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-12-0396 |
| Filed | September 30, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's conviction for unlawful contact with a streetgang member was reversed, since the evidence that the person defendant had contact with was a civil finding by a preponderance of the evidence that the person was a gang member, and that civil finding was insufficient to meet the State's burden of proving beyond a reasonable doubt that the person was a member of a streetgang. |
| Decision Under Review | Appeal from the Circuit Court of Boone County, No. 10-CM-776; the Hon. John H. Young, Judge, presiding. |
| Judgment | Reversed. |

Counsel on
Appeal

Thomas A. Lilien and Yasemin Eken, both of State Appellate Defender's Office, of Elgin, for appellant.

Michelle J. Courier, State's Attorney, of Belvidere (Lawrence M. Bauer and Aline Dias, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE JORGENSEN delivered the judgment of the court, with opinion.

Presiding Justice Burke and Justice Hutchinson concurred in the judgment and opinion.

**OPINION**

¶ 1    In November 2011, after a bench trial, defendant, Artemio Rubalcava, was convicted of unlawful contact with streetgang members (720 ILCS 5/25-5(a)(3) (West 2010)) and sentenced to 12 months of conditional discharge. Defendant appeals, arguing that: (1) the evidence was insufficient to sustain his conviction; and (2) the court erred in relying on inadmissible hearsay evidence. Because we agree with defendant's first argument, we reverse defendant's conviction.

¶ 2                                    I. BACKGROUND

¶ 3    For context, we note that the statute defining the crime of which defendant was convicted provides that "[a] person commits *** unlawful contact with streetgang members when *** he or she knowingly has direct or indirect contact with a streetgang member as defined in Section 10 of the Illinois Streetgang Terrorism Omnibus Protection Act [(Act)]" (740 ILCS 147/10 (West 2008)) after he or she was "ordered by a judge in any non-criminal proceeding to refrain from direct or indirect contact with a streetgang member or members." 720 ILCS 5/25-5(a)(3) (West 2010).

¶ 4                        A. Case No. 09-CH-268: Civil Court Order

¶ 5    In 2009, in case No. 09-CH-268, the Boone County State's Attorney brought, pursuant to the Act, a civil suit against the "Latin Kings, *et al.*" The "*et al.*" referred to multiple individual defendants, including defendant in the instant case. However, the State's case against defendant was settled. An agreed settlement and injunctive order, entered against defendant on August 27, 2009, provided, in part, as follows:

            "3. Upon the admission of [defendant], to the allegations of the complaint, the court

finds that the People of the State of Illinois are entitled to injunctive relief against [defendant], and the court hereby orders [defendant] enjoined and restrained for the duration of this agreed settlement from the following activities within the State of Illinois:

> (a) Standing, sitting, walking, driving, gathering, or appearing anywhere in public view with any other defendant or known Latin King gang member; and

> (b) Standing, sitting, walking, driving, gathering, or appearing anywhere in public view with any gang member as defined in 740 ILCS 147/10[.]"

In addition, defendant acknowledged that the foregoing prohibitions constituted a "judicial order in [a] non-criminal proceeding prohibiting the defendant's knowing direct or indirect contact with a streetgang member or members within the meaning of 720 ILCS 5/25-[5(a)(3)]." The order was signed by the State's Attorney, defendant, and the trial judge (signature illegible).

¶ 6    In an 18-page memorandum decision issued on April 30, 2010, by trial judge Eugene G. Doherty, case No. 09-CH-268 was resolved against the remaining defendants, including Antonio Delgadillo. In that memorandum, the court referenced evidence showing "dozens of examples" of Latin Kings graffiti defacing numerous properties, noting that the graffiti was identifiable as such by virtue of Latin Kings symbology, initials, or otherwise. The court found that the general identification of Latin Kings symbology was supported by the testimony of West Chicago Deputy Chief of Police Bruce Malkin, while the specific identification of the graffiti in evidence as containing Latin Kings symbology was supported by the testimony of Detective David Dammon. The court found that the Latin Kings constitute a "streetgang" as defined in section 10 of the Act (740 ILCS 147/10 (West 2008)), basing its finding on: (1) the fact that the graffiti promoted the Latin Kings; and (2) Malkin's testimony.

¶ 7    The court next evaluated the evidence supporting Latin Kings membership as to each defendant. The court found that, as to some of the defendants, the State did *not* meet its burden of establishing that they were gang members. As to Delgadillo, however, the court found, by a preponderance of the evidence, that he was a member of the Latin Kings. The court noted Dammon's testimony that, in his opinion, Delgadillo was a member of the Latin Kings. Further, the court noted that Sergeant Mark Pollock testified that, on July 4, 2008, Delgadillo admitted to him that he was a member of the Latin Kings. Officer Kaplan testified that Delgadillo made the same admission to him on August 30, 2008, and Detective Woody testified that, on July 13, 2009, Delgadillo told him that he had been an associate of the Latin Kings for three years and became a full-fledged member the prior year. Further, the court noted that it had considered an exhibit showing Delgadillo's tattoo of a kingly figure wearing a five-pointed crown with the initials "ALK," which Malkin and Dammon testified represented the words "Almighty Latin Kings." According to the court, the tattoo also appeared to include "13K," which Malkin and Dammon testified represented terminology against the Surenos gang. Finally, the court considered an exhibit showing Delgadillo wearing Latin Kings colors (a gold and black sweatshirt) in the presence of several individuals, at least three of whom were flashing recognizable Latin Kings hand signs.

Although Delgadillo testified that he was not a Latin Kings member and that the initials in the tattoo were "HLK," which represented the Los Angeles neighborhood in which he was born, the court found that the State had proved that Delgadillo was "more likely than not" a member of the Latin Kings. "Most significant to the Court are Delgadillo's multiple admissions of membership and his tattoos reflecting Latin Kings terminology."

¶ 8   Concerned about potential infringement on the remaining defendants' constitutional rights to associate in noncriminal ways, the court entered a "no association" order (as requested by the State) but stayed enforcement of the order so that the defendants could take advantage of the opportunity to "step away" from the gang.[1] Finally, the court noted that the case against defendant had been resolved via the previously entered agreed order.

¶ 9                              B. Criminal Trial Evidence

¶ 10   On September 7, 2010, defendant was charged in the instant case with unlawful contact with streetgang members in that, on August 22, 2010, he "knowingly had direct contact with Antonio Delgadillo, a member of the Latin Kings, a streetgang, after said defendant had been ordered [not to] by a judge in a non-criminal proceeding, to wit: 2009CH268 in that said defendant exited the residence of 1432 Garfield and entered a vehicle with Antonio Delgadillo, a known street gang member."[2]

¶ 11   At trial, Officer Joseph Slomka testified that, on August 22, 2010, he responded to a disorderly conduct call from the 1400 block of Garfield Avenue in Belvidere. The disorderly conduct call did not involve defendant. While at the scene, however, Slomka saw two parked cars; he ran their license plate numbers and determined that one of them belonged to defendant. Slomka then saw Delgadillo exit the residence at 1432 Garfield Avenue. Slomka spoke with Delgadillo, and then Delgadillo returned inside the house. Later, Slomka saw two people exit Delgadillo's house and get into defendant's car. The car drove down the street, made a U-turn, and then returned to 1432 Garfield. Slomka saw Delgadillo and defendant exit the vehicle.

¶ 12   Slomka testified that he recognized defendant "through previous contacts," and that "he's also listed in our gang data base, and I was familiar with our Belvidere Police Department gang database." Defense counsel objected as follows: "Objection to that portion, if he saw him, or previous contact. First of all, when." The court overruled the objection, noting for defense counsel, "that's the basis of his knowledge." When Slomka was asked how he had recognized Delgadillo, he replied, "I've had previous contact with him and he's also listed in our gang database." At that point, the court interjected "[s]ame objection by [defense

<hr>

[1]We note that, with respect to the stay, the defendants who did *not* settle arguably fared better than defendant here, as his no-association order was not stayed but, rather, was entered in exchange for dismissal of the complaint.

[2]Thus, the alleged contact occurred approximately 12 months after entry of the settlement order barring defendant from contact with gang members and approximately 4 months after the memorandum decision was issued.

counsel], same ruling. You can cross-examine him on it." Slomka continued, testifying that he approached the two men and asked what they were doing. Defendant, who had been driving, said that he was moving his car. While Slomka talked with defendant, Delgadillo was present. Slomka was aware of a court order prohibiting defendant and Delgadillo from having contact with one another (though he had not read it), and he arrested defendant.

¶ 13    As to the gang database, Slomka testified on cross-examination that he did not create it but that he and other officers could enter information into it. The gang database can be updated, but it is not updated on a regular schedule. Although information can be removed from the database, such corrections do not typically occur:

> "DEFENSE COUNSEL: So if someone was at one point listed in here as a gang member, are they ever removed?
>
> SLOMKA: Not to my knowledge.
>
> DEFENSE COUNSEL: So people that go into the gang database remain there for life as far as you know?
>
> SLOMKA: Possibly, yes."

Slomka further agreed that, sometimes, people do remove themselves from gang membership.

¶ 14    Also on cross-examination, Slomka testified that his prior contact with defendant was probably within one year before the August 2010 contact. He did not recall previously arresting defendant or a specific date of any prior contact. Similarly, Slomka could not recall a specific date when he had previous contact with Delgadillo, but he estimated that it had occurred a few months before the August 2010 contact. On redirect, Slomka testified that, when he had prior contact with defendant and Delgadillo, they were in the company of other gang members, but he could not recall the reason for the prior contact. He added that the information in the gang database came from local police officers and Boone County sheriff's deputies, and it reflected who an alleged gang member was with and what he or she was doing at the time of the police contact.

¶ 15    The State next called Delgadillo to the stand. Delgadillo testified that he was not a gang member, had never been a gang member, and, specifically, was not a gang member on August 22, 2010. He agreed that the State had previously accused him of being a member of the Latin Kings. Delgadillo testified that, on August 22, 2010, defendant was dating Delgadillo's sister.

¶ 16    The State asked the court to take judicial notice of "the order in 09-CH-268," which, "on page two of that order, Your Honor, paragraph number two, identifies *** Mr. Delgadillo as a gang member despite his denying it, Judge. And reference paragraph number two, where it indicates that the behavior alleged in this charge, the association with other known gang members, is prohibited, Judge." The court noted that the "order" was marked as People's exhibit No. 2, and summarized it as the "order memorializing the memorandum of decision

in 09-CH-268."[3] The court asked defense counsel if there was any objection, and defense counsel responded, "Judge, I believe the court can take judicial notice *of its own file*." (Emphasis added.) The State rested.

¶ 17    Defendant moved for a directed finding. In argument, defendant noted that "in the memorandum" Judge Doherty found several individuals to be gang members by only a preponderance of the evidence and that, in the criminal case, the State needed evidence, beyond the "order," to prove that fact beyond a reasonable doubt. Defendant reiterated that, "[b]ased upon the order, and the memorandum of decision, it is clear that it is strictly by a preponderance of the evidence, not proof beyond a reasonable doubt."

¶ 18    After hearing argument, before retiring to consider the motion, the court commented that it was "going to look at the memorandum of decision, while I believe that's not been presented as an exhibit, I think the order is what is effective, but I want to read the memorandum of decision that got memorialized by the order." Further, the court mentioned, "I'm aware of and I believe that there is, as part of 09-CH-268, I believe that there was an agreed settlement and injunctive order signed by your client." Defense counsel responded that, while that might be the case, the State did not present that to the court or ask that it be entered. The court responded, "Well, my problem is that I'm aware of it," and thus it would consider it.

¶ 19    On November 1, 2011, the court denied defendant's motion for a directed finding. In doing so, it noted that the injunction against defendant precluded contact with "any other defendant" from case No. 09-CH-268, which included Delgadillo. Defendant presented no evidence and rested.

¶ 20    On November 29, 2011, the parties reconvened for closing arguments and a judgment. In his closing argument, defense counsel reiterated that the State had not asked the court to take judicial notice of defendant's settlement and injunctive order but, instead, "[it] asked to enter the memorandum of decision [and it] asked the court to take notice of the memorandum." Defendant noted that the findings made by Judge Doherty, where the testimony was more in-depth than at the criminal trial, satisfied only the preponderance standard. "The State would have to, at the very least, present that evidence again, and probably more so, to prove that, on that date, on August 22, [2010], *** the State must prove again that Latin Kings was a streetgang and that Mr. Delgadillo was a street gang member ***."

¶ 21    The court found defendant guilty of unlawful contact with streetgang members. When announcing its decision, the court noted that, although Slomka testified about gang contacts

<hr>

[3]Although the court and the parties referenced an order that purportedly memorialized the April 30, 2010, memorandum decision, referring to it as People's exhibit No. 2, the record on appeal reflects People's exhibit No. 2 as being only the memorandum decision itself. Indeed, the memorandum decision does not correspond to the State's summary that page 2, paragraph 2, identifies Delgadillo as a gang member and prohibits contact with him. Thus, there appears to be a separate order, which was entered to memorialize the memorandum decision, that is not contained in the appellate record.

and the gang database, which was permissible to explain his information and where he obtained his knowledge, it was not, in and of itself, enough (presumably to establish gang membership), "because again, specifically, he indicated that he's not aware that anything is ever deleted from that database." The court further noted that the preponderance-of-the-evidence standard applied in the civil case and that, in the current case, Delgadillo had testified that he was not a gang member. Nevertheless, the court announced:

> "[B]ased on [defendant] signing the agreed order, where Mr. Delgadillo was also a defendant, based upon Officer Slomka's testimony, and based upon the finding of Judge Doherty, I think the State meets its burden that he is a gang member and then[,] therefore[,] what falls from that is that there was contact."

The court, noting that it wished to show its work for the record, continued, "Slomka testified [that Delgadillo] was in a gang. [Defendant] signed an order that agreed to that–the statute would apply to him. That order that he signed was in the same case where Mr. Delgadillo was named as a defendant, and Judge Doherty found that he was more probably than not a member of a gang. I think that's sufficient to show he's a member of a gang." Defense counsel noted that, regardless of the order, there needed to be evidence to prove the street gang membership by more than a preponderance. The court answered, "I believe Slomka's testimony. The other factor, that Mr. Delgadillo was a defendant in the case where [defendant] signed the agreed order." In addition, the court again noted that Judge Doherty found by a preponderance of the evidence that Delgadillo was a gang member. The court held that those things collectively satisfied the beyond-a-reasonable-doubt standard.

¶ 22     In his motion to reconsider and set aside the judgment, defendant argued, in part, that the court erred in: (1) assuming that the findings in the "memorandum of decision" *remained* factually correct and applicable on the date in question; and (2) elevating the findings in the memorandum, which were specifically based on a preponderance standard, to proof beyond a reasonable doubt. In his oral argument on the motion, defense counsel noted that there had been discussion regarding Judge Doherty's memorandum and, "while the court did take judicial notice of it, *** even if everything in that memorandum was accurate, it was only accurate up until the findings were made in that memorandum." Counsel continued that the memorandum was issued months before the August 2010 contact, that Judge Doherty found that Delgadillo was a Latin Kings member only at the time of the memorandum and only by a preponderance of the evidence, and that the State did not present additional evidence to establish proof beyond a reasonable doubt. Further, counsel argued, the State did not show that, even if Delgadillo had been a member of the Latin Kings, he continued to be so. Specifically, counsel noted that Judge Doherty's finding that Delgadillo was a Latin Kings member:

> "was based on quite a bit of testimony, and everything else, but it only rose to the level of preponderance of the evidence. There's no way to suggest that that then rises to the level of proof beyond a reasonable doubt. The State did nothing to add to that. They didn't call in any of those witnessses. *** So, even if Mr. Delgadillo was a member of the Latin Kings, there was no testimony, no proof, that on [August 22, 2010], *** he still was. In fact, that would have been in direct contrast to what Judge Doherty ordered him to do, which was to stop being a gang member. There's no reason to believe, then, if he

-7-

was a gang member, that he didn't follow that judge's order to stop being a gang member. If that's the case, then on [August 22, 2010], he wasn't a gang member."

¶ 23 On March 27, 2012, the court denied defendant's motion to reconsider. In doing so, the court noted that defendant's strongest argument was that the State needed to prove that, on August 22, 2010, Delgadillo remained a Latin Kings streetgang member. The court sentenced defendant to 12 months' conditional discharge. Defendant appeals.

¶ 24                                    II. ANALYSIS

¶ 25 Defendant argues first that the evidence was insufficient to establish the essential elements of the crime. Specifically, defendant contends that the State failed to prove beyond a reasonable doubt that, when he had contact with Delgadillo on August 22, 2010, Delgadillo was a Latin Kings streetgang member. Further, defendant contends that the State presented no evidence that the Latin Kings is a streetgang as defined by the Act. Defendant contends that, because the State failed to present any evidence on either of these elements of the offense, we must reverse his conviction. For the following reasons, we agree with defendant's first contention.

¶ 26 "[T]he due process clause 'protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.' " *People v. Jeffries*, 164 Ill. 2d 104, 114 (1995) (quoting *In re Winship*, 397 U.S. 358, 364 (1970)). When reviewing a challenge to the sufficiency of the evidence, whether from a bench or jury trial, we consider whether, after viewing the evidence in the State's favor, any rational trier of fact could have found the crime's essential elements beyond a reasonable doubt. *People v. Hernandez*, 2012 IL App (1st) 092841, ¶ 13. The State may rely upon circumstantial evidence, as long as it provides proof beyond a reasonable doubt of each element of the crime charged. *People v. Laubscher*, 183 Ill. 2d 330, 335-36 (1998). "However, there must be *some* evidence giving rise to a reasonable inference of defendant's guilt; the State may not leave to conjecture or assumption essential elements of the crime." (Emphasis in original.) *Id.*

¶ 27 The crime with which defendant was charged required the State to prove that defendant had contact with a streetgang member, as defined by the Act, after being ordered by a court in a noncriminal proceeding to refrain from such contact. 720 ILCS 5/25-5(a)(3) (West 2010). The Act defines "streetgang member" as:

"[A]ny person who *actually and in fact* belongs to a gang, and any person who knowingly acts in the capacity of an agent for or accessory to, or is legally accountable for, or voluntarily associates himself with a course or pattern of gang-related criminal activity, whether in a preparatory, executory, or cover-up phase of any activity, or who knowingly performs, aids, or abets any such activity." (Emphasis added.) 740 ILCS 147/10 (West 2010).

¶ 28 The State's argument that the evidence was sufficient to sustain defendant's conviction is essentially premised on the evidence contained in the civil memorandum decision. Specifically, the State asserts that, where defendant agreed that the court could take judicial notice of People's exhibit No. 2, he allowed the court to take judicial notice of all of the

-8-

facts, not just the ultimate findings, contained in the memorandum decision, and he thereby waived (or, by not objecting, forfeited) any right to appeal the court's having done so. The facts in the memorandum decision, the State asserts, included testimony from police officers who opined that the Latin Kings is a streetgang and evidence regarding: Delgadillo's tattoos; photographs of Delgadillo with other individuals who were flashing Latin Kings signs; photographs of Delgadillo wearing Latin Kings colors; and purported admissions Delgadillo made to officers that he was a Latin Kings member. The State concedes that defendant did not expressly *stipulate* to the evidence contained in the exhibit; however, it argues that defendant's agreement to judicial notice and his failure to specifically object to judicial notice of the facts in the memorandum was *tantamount* to a stipulation, and therefore defendant may not challenge the sufficiency of the evidence.

¶ 29        Defendant disagrees that, by accepting that judicial notice could be taken of the civil order, he conceded that the court could consider the *evidence* therein for purposes of his criminal trial; he argues, therefore, that he may raise a sufficiency argument. First, defendant notes, the State requested only that the court take judicial notice of the civil *order*, not the memorandum's *facts* concerning the civil trial evidence, which constituted hearsay. As such, defendant argues, his agreement was limited to the State's request: that the court take judicial notice that Judge Doherty found by a preponderance of the evidence that Delgadillo was a gang member. Second, defendant asserts that the court could not take judicial notice of a witness's testimony at a prior hearing, because it constitutes inadmissible hearsay. To do so, defendant argues, would violate his right to confrontation, since the civil witnesses testified in another person's civil trial (Delgadillo's) and not in defendant's criminal trial. Therefore, defendant argues, his failure to object to judicial notice of the order was not tantamount to a stipulation, because his agreement extended only to that which may be "judicially noticed," *i.e.*, that capable of ready determination by resort to sources whose accuracy cannot be reasonably questioned. Third, defendant argues that, not only did the State not request it, but the court did *not* take judicial notice of all of the facts contained in the memorandum, as nothing in the record indicates that the court's decision relied on hearsay evidence from the civil case to find him guilty in the criminal case. Thus, defendant argues that we should reject the State's waiver argument and, in turn, its sufficiency-of-the-evidence argument because that argument is premised on its incorrect belief that the evidence from the civil trial was admitted and considered in the criminal trial.

¶ 30        We reject the State's waiver and forfeiture argument and disagree with its premise that defendant, by agreeing to judicial notice generally and not objecting to judicial notice of the file (including the memorandum),[4] conceded the admissibility of the contents of the memorandum as evidence to be used against him in the criminal trial. First, the information

_____

[4]However, we also reject defendant's argument that, because the State requested only that the court take judicial notice of the civil "order," his decision not to object was limited to the order itself (and not the memorandum). Regardless of the wording of the State's request, when asked whether he objected, defense counsel agreed that "the court can take judicial notice *of its own file*." (Emphasis added.) Further, throughout the remaining proceedings, *defendant* mentioned that the court had taken judicial notice of the memorandum.

at issue, *i.e.*, police officers' testimony about Delgadillo and descriptions of photographic evidence, is not the type of information that is subject to judicial notice. Specifically, Illinois Rule of Evidence 201(b) provides: "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Ill. R. Evid. 201(b) (eff. Jan. 1, 2011); see also *People v. Davis*, 65 Ill. 2d 157, 165 (1976) (judicial notice may be taken of facts that, if not generally known, are "readily verifiable from sources of indisputable accuracy"). Clearly, the officers' testimony and the descriptions and interpretations of the photographs fit neither of the aforementioned two categories, if for no other reason than that Delgadillo himself, in both the criminal and the civil trials, disputed them.

¶ 31 Second, although a court may take judicial notice of matters of record (*i.e.*, that Judge Doherty issued the memorandum decision, which contained various findings), "taking judicial notice of matters of record in a court's own proceedings cannot result in admitting hearsay evidence where it would otherwise be prohibited." (Emphasis added.) *In re A.B.*, 308 Ill. App. 3d 227, 237 (1999); see also *In re Estate of Michalak*, 404 Ill. App. 3d 75, 94 n.2 (2010) (noting same in addressing a hearsay challenge to the trial court's decision to take judicial notice of a previously filed report and to consider it in its entirety (including all statements therein)).

¶ 32 In *People v. Philippi*, 186 Ill. App. 3d 353, 358-59 (1989), this court held that a court may not take judicial notice of testimony given by nonparty witnesses in an unrelated case. There, the State objected when the *defendant* moved to admit into evidence the testimony of two witnesses from an unrelated case that the simulator that was used to test the defendant's blood-alcohol levels in both cases was defective. The trial court admitted the testimony, noting that, although the witness opinions were not in the "same realm of, you know, me taking judicial notice about the sun and moon and stars and other scientific things," it did not wish to waste time and resources, particularly where the former testimony took place before the same judge and prosecuting and defense attorneys. *Id.* at 357. In reversing the trial court, this court noted the applicable law:

" 'The general rule, which seems to be supported by all of the authorities, is that the evidence given by a witness in a previous action is relevant for the purpose of proving the matters stated in a subsequent proceeding, or in a later stage of the same proceedings, *when the witness is dead, or is insane, or is so ill that he will probably never be able to travel, or is kept out of the way by the adverse party*, and in some States when he is out of the jurisdiction of this court, provided there be identity of parties and issues in the former proceeding and the later.' " (Emphasis in original.) *Id.* at 358 (quoting *George v. Moorhead*, 399 Ill. 497, 500 (1948)).

We further noted that the rule would, therefore, *exclude* the former testimony of a witness still alive and capable of being subpoenaed as a witness. *Id.*

¶ 33 Similarly, in *People v. Brown*, 177 Ill. App. 3d 671 (1988), the defendant was charged with driving under the influence (DUI) and the arresting officer testified at a hearing on a petition to rescind the summary suspension of the defendant's driver's license. Later, when

the defendant moved to suppress evidence at the DUI trial, the court took judicial notice of the arresting officer's testimony from the summary suspension hearing. On appeal, the court held that, where there was no showing that the officer could not have been subpoenaed to appear, it was error to take judicial notice of his prior testimony. *Id.* at 673. Specifically, the court stated:

" 'In taking judicial notice of the record or prior proceedings in this cause, the circuit court apparently sought to expedite matters and eliminate the need to recall nonparty witnesses. However, this procedure also skirted the normal rule that prior testimony is hearsay that may be used as substantive evidence only when the witness is unavailable by death, illness or other such cause.' " *Id.* at 672 (quoting *In re Gonder*, 149 Ill. App. 3d 627, 629 (1986)).

¶ 34     Given the foregoing, the court here could *not*, absent a stipulation or clear waiver or forfeiture, consider substantively the evidence summarized in the memorandum decision. Although the court could take judicial notice of the findings in the memorandum decision, the foregoing case law instructs that it could not consider as substantive evidence against defendant the evidence summarized in the memorandum, which was provided by nonparty witnesses in another case against another defendant (*i.e.*, Delgadillo). To do so would violate defendant's right to confront witnesses and would be an improper use of judicial notice. We reject the State's assertion that waiver, the *intentional* relinquishment of a known right (*People v. Phipps*, 238 Ill. 2d 54, 62 (2010)), or forfeiture, the failure to make a timely assertion of the right (*id.*), applies here. Nothing suggests that, when defendant did not object to the State's request for "judicial notice" of the civil order, his acquiescence extended to the substantive admission of the evidence in the civil case. Again, defendant and the State did not enter into a stipulation (*i.e.*, an agreement between parties with respect to an otherwise disputed issue (*People v. Woods*, 214 Ill. 2d 455, 468 (2005))). Further, given the definition of judicial notice and the case law reflecting the limitations thereof, we cannot conclude that, when defendant agreed that the court could take judicial notice of the file (including the order and memorandum), he conceded that the *evidence* summarized therein, which resolved the civil case against *Delgadillo*, could be used substantively against *him* in the criminal matter.

¶ 35     Moreover, and as defendant notes, nowhere in the record does it appear that the trial court even considered as substantive evidence against defendant the evidence summarized in the memorandum. Indeed, the trial judge is presumed to know the law. *People v. McCoy*, 207 Ill. 2d 352, 355 (2003). Here, the court announced the bases for its decision (specifically noting that it wished to show its work for the record), but it did not explicitly adopt or reference the *evidence* from the civil case as evidence in the criminal case. Instead, the court considered Judge Doherty's "finding," by a preponderance of the evidence, that Delgadillo was a gang member as *some* evidence thereof, and then viewed the following as proving that fact beyond a reasonable doubt: (1) the fact that defendant's settlement order barred him from contact with other civil defendants and Delgadillo was one such defendant; and (2) Slomka's testimony. For the following reasons, however, we conclude that the court erred in both respects and that defendant's conviction must be reversed.

¶ 36     First, by considering defendant's contact with another defendant from the civil case as evidence against him in the criminal case, the court appears to have mistakenly applied the

statute. To bring defendant's violation of the civil order under the purview of the criminal statute, the contact must have been with a gang member. 720 ILCS 5/25-5(a)(3) (West 2010) ("[a] person commits *** unlawful contact with streetgang members when *** he or she knowingly has direct or indirect contact with a streetgang member" after he or she was "ordered by a judge in any non-criminal proceeding to refrain from direct or indirect contact with a streetgang member or members"). The fact that defendant violated the civil order by having contact with another defendant from the civil case does not speak to whether that other defendant was, beyond a reasonable doubt, a gang member. Defendant's violation of the civil order by having contact with another defendant might constitute contempt of court, but it is not within the purview of the criminal statute, which prohibits contact with a gang member. Indeed, we note that, in the civil case, Judge Doherty found that, as to some of the defendants, the State did *not* meet its burden of establishing that they were gang members. Accordingly, while defendant's contact with those defendants might violate his settlement agreement, it would not constitute criminal conduct under section 25-5(a)(3).

¶ 37     Second, as to Slomka's trial testimony, the court stated that it "believed" it, but Slomka never actually testified that Delgadillo was a gang member. Rather, and in contrast to trial testimony that has been found sufficient to sustain a conviction of unlawful contact with a gang member, Slomka testified only that he knew Delgadillo from prior contacts, that Delgadillo was in the gang database, and that, when he had encountered Delgadillo in the past, Delgadillo was in the company of gang members. *Cf. People v. Jamesson*, 329 Ill. App. 3d 446, 450-51 (2002) (officer testified at trial that the defendant had contact with Sam Banuelos; according to the officer, he had had numerous prior contacts with Banuelos (resulting in tickets and/or charges), Banuelos was a known gang member, Banuelos had admitted to the officer that he was a gang member, and Banuelos wore gang colors and was usually in the presence of other gang members; the officer opined at trial that, based on his previous contacts with Banuelos, previous records, and the area where he had observed Banuelos, Banuelos was a Latin Counts gang member on the date of the contact that formed the basis of the charges against the defendant). Further, in ruling, the court commented that it did not find Slomka's testimony that Delgadillo was in the gang database as sufficient to establish gang membership, because Slomka agreed that, if someone leaves a gang, the database might never corrected. Finally, we note that, in its response to defendant's second argument on appeal (that the gang database was hearsay and could not be considered to establish gang membership), the State concedes that Slomka's testimony about the gang database was introduced *not* to establish gang membership or the truth of the matter asserted but, rather, only as "an explanation of his investigatory procedures" and "to explain to the court how he was familiar with defendant and Mr. Delgadillo, and to give context to his reason for approaching them." Accordingly, the court's comment that "Slomka testified that [Delgadillo] was in a gang" is not supported by the record. Thus, while Slomka's testimony sufficed to satisfy the contact element of the crime, the court's finding that it established Delgadillo's gang membership is not supported by the evidence.

¶ 38     Therefore, as Slomka did not testify that Delgadillo was a gang member, all that was left for the court to consider was the civil finding, by a preponderance of the evidence, that Delgadillo was a gang member, and Delgadillo's testimony before the court that he was *not*,

and never had been, a gang member. The court could have rejected Delgadillo's denial on credibility grounds, but as defendant notes, the State presented no evidence, beyond the civil finding, that Delgadillo was a gang member. As such, we conclude that the evidence was insufficient to establish that on August 22, 2010, defendant had contact with a person who was, beyond a reasonable doubt, a gang member.

¶ 39   In sum, we conclude that the trial court erred where it found that the State met its burden of proving, beyond a reasonable doubt, that, when defendant had contact with Delgadillo, Delgadillo was a streetgang member. We need not address defendant's contention that the State failed to prove that the Latin Kings is a streetgang. Because we reverse defendant's conviction on sufficiency grounds, we need not address his alternative appellate argument.

¶ 40                                 III. CONCLUSION

¶ 41   For the aforementioned reasons, the judgment of the circuit court of Boone County is reversed.

¶ 42   Reversed.