2020 IL App (1st) 161068-U
No. 1-16-1068
September 30, 2020

FIRST DIVISION

**NOTICE**: This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, ) | Appeal from the Circuit Court | |
| ) | Of Cook County. | |
| Plaintiff-Appellee, ) | | |
| ) | No. 03 CR 12481 | |
| v. ) | | |
| ) | The Honorable | |
| CHRISTOPHER PEOPLES, ) | Arthur F. Hill, Jr., | |
| ) | Judge Presiding. | |
| Defendant-Appellant. ) | | |

JUSTICE WALKER delivered the judgment of the court.
Justice Hyman concurred in the judgment.
Justice Pierce dissented.

**ORDER**

¶ 1    *Held*:    A postconviction petition with its supplement and documents supporting the claim that defense counsel failed to impeach a witness with available evidence of crimes states the gist of a claim for ineffective assistance of counsel.

¶ 2    A jury found Christopher Peoples guilty of murder and home invasion committed in 2002. In a postconviction petition, Peoples alleged that he received ineffective assistance of counsel when his attorney failed to impeach a detective who falsely testified that Peoples confessed to participating in the murder. The trial court dismissed the petition without holding an

evidentiary hearing. We find that Peoples has made a substantial showing that his attorney provided objectively unreasonable assistance by failing to impeach the detective. We also find that Peoples has substantially shown a reasonable probability that he would have achieved a better result if the attorney had used available evidence to impeach the detective. We reverse the dismissal of the postconviction petition and remand for an evidentiary hearing.

¶ 3                                                I. BACKGROUND

¶ 4          On May 8, 2002, around 8:30 p.m., Ninner Powers escorted two guests to her front door. As she closed the door behind them, a push on the door knocked her back. Three men entered her home. She recognized Marcel White and James Mitchell, but she did not recognize the third man. The three men accused her and her fiancé, Brian Campbell, of selling drugs for a rival gang. Campbell heard the men and came to see what they wanted. The man Powers did not recognize drew a gun and fired three shots at Campbell. The man then aimed at Powers and pulled the trigger, but the gun did not discharge. Powers picked up a revolver from the floor and pointed it at the three men. They ran off. Powers asked neighbors to call the police. Campbell died from the gunshot wounds.

¶ 5          Powers told police about White and Mitchell, and she later identified photographs of them at the police station. She described the third man as a medium complexion Black man, with a stocky muscular build and an afro. She also stated that he was between 5 foot 10 and 6 feet tall, around 200 to 220 pounds, with a gap between two of his teeth. Police showed Powers an array of photographs some months later, in August 2002. She chose a photograph of Peoples as a picture of the shooter. She again identified Peoples as the shooter in a lineup in September 2002. Peoples, a 6 foot tall bald Black man with a goatee and a mustache, weighed 170 pounds

and had a gold tooth but no gap. Prosecutors charged Peoples with first degree murder and home invasion.

¶ 6      At the jury trial held in December 2004, Powers again identified Peoples as the shooter. Peoples, his girlfriend, and two family members testified that Peoples stayed at his mother's home working on his car all evening on May 8, 2002. The defense witnesses testified that Peoples had long worn a goatee and a mustache, kept his hair very short or bald, and he never weighed close to 200 pounds. Peoples testified that he did not make any statements to police about the murder.

¶ 7      Detective John Halloran testified that he spoke with Peoples in September 2002, following his arrest, and Peoples said that on May 8, 2002, Mitchell asked Peoples to "provide him with some muscle" for a confrontation with people selling drugs for a rival gang. According to Halloran, Peoples said Powers let them in the front door and they confronted Campbell. When Peoples heard gunshots, he started running. According to Halloran, Peoples said he did not fire any shots. Halloran further testified that Peoples refused to speak to an Assistant State's Attorney, and he refused to make a video recorded statement.

¶ 8      The jury found Peoples guilty of home invasion and first-degree murder. The court sentenced him to 75 years in prison for murder, plus 10 years for home invasion, with the sentences to run consecutively. The appellate court affirmed the convictions and sentences. *People v. Peoples*, 377 Ill. App. 3d 978 (2007).

¶ 9      Peoples filed a postconviction petition in 2008. He alleged that his trial counsel provided ineffective assistance by failing to impeach Halloran with evidence of crimes Halloran committed as a member of the Chicago Police Department. Peoples alleged that his attorney

3

could have found evidence that between 1990 and 2000, Halloran participated in the abuse of: (1) John Plummer, a mentally unstable juvenile, beaten by police; (2) Kilroy Watkins, who signed a false confession under police duress; (3) Harold Hill, a mentally retarded man who confessed after police beat him; (4) Dan Young, beaten and force fed by police until he falsely confessed; (5) Tyrone Reyna, struck, threatened, and tricked into signing a false confession; (6) Antoine Holiday, William Hughes, and Richard Anthony, who confessed to multiple murders after police beat them, threatened them, and deprived them of food, sleep, and use of a toilet; (7) Fred Ewing and Darnell Stokes, mentally retarded juveniles tortured into confessions; (8) Michael Taylor, beaten by police and denied access to food, his family, and his lawyer; (9) Derrick Flewellen, a mentally retarded man who falsely confessed to two murders after police beat him; (10) Eric and Oscar Gomez, beaten by police and denied food, sleep, and use of a toilet for 30 hours; (11) Kylin Litte, beaten until he gave a false statement implicating Eric Gibson in a murder; (12) Jason Miller, beaten until he gave a false statement implicating William Ephraim in a murder; (13) Andre Brown, psychologically coerced into a false confession; (14) Reginald Cole, shot dead inside police headquarters during an interrogation; (15) Peter Williams, beaten until he falsely confessed; and (16) Nicholas Escamilla, beaten and threatened with harm to his wife and child.

¶ 10      Peoples supported his petition with court complaints filed in several cases naming Halloran and other police officers as defendants, and records of complaints made to the Office of Professional Standards.

¶ 11      A public defender supplemented Peoples's petition with more detail concerning the allegations that Halloran abused the victims Peoples listed, and added allegations concerning

4

other victims of Halloran's abuse. According to the supplement to the postconviction petition, in 1994 Halloran threatened to have the Department of Children and Family Services take Sheila Crosby's children if she did not make the identifications he sought in a homicide case. Halloran and fellow officers beat Abel Quinones and instructed him to sign a false statement Halloran dictated. Halloran fabricated a statement prosecutors used to obtain a conviction of Robert Wilson in 1997.

¶ 12    The public defender supported the postconviction petition and the supplement with several complaints detailing allegations of Halloran's crimes against the listed victims, transcripts of the testimony of several victims, and newspaper articles concerning long term investigations into the crimes committed by Halloran and his fellow officers, starting with their acts under the direction of Commander Jon Burge at Area 2 and Area 3 police headquarters.

¶ 13    The trial court held that even if Peoples could prove the allegations of the petition and its supplement, "[i]t is unclear exactly how Detective Halloran would have been impeached." The court held that Peoples had not made a substantial showing of ineffective assistance of counsel. The court denied the petition without holding an evidentiary hearing. Peoples now appeals.

¶ 14                                II. ANALYSIS

¶ 15    When the trial court denies a postconviction petition without holding an evidentiary hearing, we review the decision *de novo*. *People v. Childress*, 191 Ill. 2d 168, 174 (2000). At this stage of postconviction proceedings, we make no credibility determinations and review the record only to decide whether the petitioner has made a substantial showing of a constitutional violation. *People v. Domagala*, 2013 IL 113688, ¶ 36. Peoples argues only that he received ineffective assistance of counsel at trial when his counsel failed to present available

5

evidence that would have impeached Halloran. We must determine whether Peoples made a substantial showing that his counsel provided objectively unreasonable assistance, and whether he made a substantial showing of a reasonable probability that he would have achieved a better result but for the error. *Domagala*, 2013 IL 113688, ¶ 36

¶ 16     The Illinois Streetgang Terrorism Omnibus Prevention Act (the Act) (740 ILCS 147/1 *et seq.* (West 2000)) defines "streetgang" as "[A]ny combination, confederation, alliance, network, conspiracy, understanding, or other similar conjoining, in law or in fact, of 3 or more persons with an established hierarchy that, through its membership or through the agency of any member engages in a course or pattern of criminal activity." 740 ILCS 147/10 (West 2000). The allegations in the postconviction petition and its supplement, along with evidence adduced in a number of other cases involving officers working under the direction of Commander Jon Burge at Area 2 and Area 3 police headquarters, support the conclusion that Burge and some of the officers he directed formed a violent criminal gang. They used a variety of methods, including torture, beatings, threats, and perjury, to obtain criminal convictions against their victims. See *Hobley v. Burge*, No. 03 C 3678 (N.D. Ill. September 16, 2004); *United States v. Burge*, No. 08 CR 846 (N.D. Ill. July 29, 2009); *United States ex rel Maxwell v. Gilmore*, 37 F. Supp. 2d 1078, 1094 (N.D. Ill. 1999); Elliott Riebman, *How and Why a Code of Silence Between State's Attorneys and Police Officers Resulted in Unprosecuted Torture*, 9 DePaul J. for Soc. Just. 1, 20 (2016) (hereinafter, "Riebman") (at: https://via.library.depaul.edu/jsj/vol9/iss2/3). The allegations in the petition, along with evidence in a number of cases, indicate that Halloran participated in the gang's criminal activities. See *People v. Tyler*, 2015 IL App (1st) 123470, ¶ 48; *People v. Weathers*, 2015 IL

App (1st) 133264, ¶ 14. "Evidence indicating the defendant was a gang member or involved in gang-related activity is generally held to be admissible to show common purpose or design, or to provide a motive for an otherwise inexplicable act." *People v. Patterson*, 154 Ill. 2d 414, 445 (1992).

¶ 17    The State argues that Halloran's alleged fabrication of Peoples's confession in 2002 does not match closely enough to the crimes alleged and were not proven in other cases involving Halloran. The State also contends that those cases mostly centered on torture and physical abuse rather than simple perjury, and most of the other cases occurred before 1999. "The amount of time separating the incidents is a relevant consideration when determining admissibility. [Citations.] Even incidents that are remote in time can become relevant, however, if the party presenting the evidence can present evidence of other incidents that occurred in the interim. Thus, a single incident years removed has little relevance. However, a series of incidents spanning several years can be relevant to establishing a claim of a pattern and practice of torture." *People v. Patterson*, 192 Ill.2d 93 (2000).

¶ 18    We find that the acts alleged in the petition show a pattern and practice of fabricating evidence to obtain criminal convictions against the victims of crimes committed by the police. Peoples has made a substantial showing that the trial court should have admitted evidence of the acts alleged in the petition to undercut Halloran's credibility by showing his participation in the criminal activities of a streetgang operating out of Area 2 and Area 3 police headquarters under the direction of Burge.

¶ 19    The documents appended to the postconviction petition support the inference that defense counsel should have tried to find evidence impeaching Halloran. Although most of the other

victims filed their complaints well after Peoples's trial took place, a number of newspaper articles about the criminal operations under Burge appeared before 2004 (see, e.g., Maurice Possley, "Veteran Detective's Murder Cases Unravel," Chicago Tribune, Dec. 17, 2001), and several victims had informed the public defender's office about the crimes committed by Burge's gang. A public defender said physical abuse by officers acting under Burge was "common knowledge." Riebman at 20. Another, in a 2004 interview, reported that when he told his supervisor of a client's allegations that police suffocated him with a plastic bag, the supervisor answered, "Oh, that would be Area 2." Riebman at 21. The documents Peoples presented support the inference that Peoples's attorney, a public defender, should have known that he could find witnesses to impeach Halloran with evidence that Halloran participated in numerous crimes. We find the public defender provided objectively unreasonable assistance by failing to look for such impeaching evidence.

¶ 20        Prosecutors presented an exceptionally thin case against Peoples. No physical evidence tied Peoples to the crime, and Powers is the only witness who identified Peoples., Powers. No other witness saw Peoples at the scene or by Powers's home. Powers did not know Peoples. Her initial description of the shooter differed markedly from Peoples. She did not remember any facial hair, but Peoples wore a mustache and a goatee. She remembered an afro hair style, but Peoples kept his head almost bald. She described the shooter as stocky, and she guessed a weight 30 to 50 pounds greater than Peoples's weight. Apart from Powers, the State presented only the testimony of Halloran, who said Peoples refused to record his statement or speak with an assistant State's Attorney after he confessed to participating with the murderers in the confrontation with Campbell. If the jury had known of Halloran's extensive criminal history

of fabricating evidence to obtain convictions against his victims, the jury may well have decided that the State failed to prove beyond a reasonable doubt that Peoples participated in the murder and home invasion.

¶ 21    Peoples has substantially shown that his attorney's unreasonable failure to impeach Halloran with available evidence of Halloran's crimes prejudiced Peoples. We reverse the dismissal of Peoples's postconviction petition and remand for an evidentiary hearing on the allegations of Peoples's petition.

¶ 22                                III. CONCLUSION

¶ 23    Peoples's postconviction petition, with its supplement and supporting documents, sufficiently alleged facts showing that his attorney committed unprofessional errors by failing to use available evidence to impeach Halloran's testimony that Peoples confessed to participating in the murder of Brian Campbell. The record supports the inference that Peoples could have achieved a better result at trial if not for his attorney's errors. We reverse the dismissal of his postconviction petition and remand for an evidentiary hearing on the allegations of the petition.

¶ 24    Reversed and remanded.

¶ 25    JUSTICE PIERCE, dissenting.

¶ 26    Peoples argues there that he received ineffective assistance of counsel at trial where his trial counsel failed to present available evidence that would have impeached Detective Halloran's testimony that Peoples confessed to participating in the murder of Brian Campbell. The majority has decided that Peoples is entitled to a third stage evidentiary hearing because Peoples petition, with supporting documents, sufficiently alleges that counsel was ineffective

9

for failing to "look for such impeaching evidence" and for failing to successfully impeach Halloran with evidence of prior wrongdoing. I respectfully dissent. Defendant's petition, and supporting documents, does not sufficiently allege that counsel was ineffective.

¶ 27    The defendant was convicted in this case on the testimony of Powers, an eyewitness, and Detective Halloran, who spoke with defendant after his arrest. Powers identified Peoples in a photo array, in a subsequent lineup and later identified Peoples as the shooter at trial. Detective Halloran testified that he spoke with defendant after he was arrested and defendant told him that he was acting as "muscle" for a confrontation with people selling drugs for a rival gang, but that he ran when the shooting began and did not fire any shots. Detective Halloran stated that Peoples refused to speak to an Assistant State's Attorney and refused to make a video recorded statement. Peoples denied making any statements to the police about the murder. Peoples did not file any pretrial motions alleging that Detective Halloran, or any other member of the Chicago police department mistreated him in any way or coerced a confession, nor did defendant testify as such when he took the stand at trial.

¶ 28    With respect to any claim made in a postconviction petition, section 122-2 of the Act instructs that a postconviction petition shall have attached thereto affidavits, records, or other supporting evidence, or shall state why the same are not attached. 725 ILCS 5/122-2 (West 2014). The purpose of section 122-2 of the Act is to establish that the verified allegations in the petition are capable of objective or independent corroboration. (Internal quotation marks omitted.) People v. Delton, 227 Ill. 2d 247, 254 (2008). A petitioner's failure to either attach the necessary "affidavits, records, or other evidence or explain their absence is fatal to a postconviction petition [citation] and by itself justifies the petition's summary dismissal."

(Internal quotation marks omitted.) Id. at 255. All well-pled facts in the petition and affidavits are taken as true, but assertions that are really conclusions add nothing to the required showing to trigger an evidentiary hearing under the Act. People v. Coleman, 183 Ill. 2d 366, 381(1998).

¶ 29    To prevail on his claim of ineffective assistance at the second stage of postconviction proceedings, defendant was required to make a substantial showing that his counsel's failure to present available evidence that would have impeached Detective Halloran was objectively unreasonable and that there is a reasonable probability that the result of the trial would have been different had this evidence been presented. People v. Domagala, 2013 IL 113688, ¶¶ 35-36. Matters of trial strategy generally are immune from claims of ineffective assistance of counsel. People v. Dupree, 2018 IL 122307, ¶ 44.

¶ 30    Although the majority states that the documents appended to the postconviction petition support the inference that defense counsel should have "tried to find evidence impeaching Halloran," there is nothing appended to People's postconviction petition that shows defense counsel did not attempt to obtain evidence that could be used for Halloran's impeachment. Defendant similarly failed to provide any evidence to support his claim that counsel's failure to impeach Halloran with whatever evidence was available at trial, was not a matter of trial strategy.  No affidavit from petitioner's trial counsel was attached to the post-conviction petitions averring that trial counsel was unaware of or failed to investigate allegations of misconduct by Detective Halloran, and petitioner has failed to explain the absence of such documentation. Section 122-2 is clear that a petitioner who is unable to obtain the necessary affidavits, records, or other evidence must at least explain why such evidence is unobtainable.

725 ILCS 5/122-2 (West 2016). Here, petitioner does not even attempt to explain this critical omission.

¶ 31     While People's failure to attach independent corroborating documentation from his attorney may be excused (People v. Collins, 202 Ill. 2d 59, 68 (2002)), petitioner was able to provide an affidavit from his co-defendant James Mitchell averring that Detective Halloran falsely testified that Mitchell gave an oral confession. Yet, Mitchell did not contend that petitioner's trial counsel failed to contact him or that he was willing to speak to petitioner's counsel. In addition, Peoples did not provide an affidavit from Mitchell's counsel averring that he was never contacted by petitioner's counsel. Furthermore, Peoples could have attached to his postconviction petition affidavits from the individuals named in the attached documents, or their attorneys, averring that they were never contacted by trial counsel, but petitioner failed to do so. In short, the documentation Peoples provided in support of his petition does not support his broad conclusion that trial counsel failed to investigate Halloran's alleged prior misconduct. People v. Johnson, 2011 IL App (1st) 092817, 1175, 93 (affirming dismissal of a second-stage post-conviction alleging, in part, that trial counsel failed to investigate a detective's pattern of coercion where the petitioner "presented no evidence that his attorneys failed to investigate the abuse listed in the newspaper articles or were even made aware of the allegations in the newspaper articles"). Therefore, petitioner failed to make a substantial showing that his counsel was ineffective for failing to investigate where his claim is unsupported.

¶ 32     Petitioner's broad claim that his trial counsel was ineffective for failing to present "available" evidence of Halloran's alleged prior acts of physical abuse and coercion at trial

12

should also be rejected as it lacks the required support. Peoples has directed this court to "newspaper articles and other information" attached to the post-conviction petition, without any real discussion of how these attached documents support his claim of ineffective assistance. After a lengthy discussion of the Illinois Streetgang Terrorism Omnibus Prevention Act (740 ILCS 147/1 et seq. (West 2000)), the majority accepts these documents as conclusive evidence that Halloran "participated in [Burge's] gang's criminal activities." This far-fetched analysis does nothing to overcome the fact that Peoples failed to specify which, if any, of the documents or articles may have provided his counsel with relevant and admissible evidence at trial, especially given the fact that many of the documents themselves clearly rebut petitioner's claim that such evidence was "available" to petitioner's counsel at the time of trial. Many of the documents petitioner relies on to support his claim were prepared or created after petitioner's December 2004 trial, as the majority acknowledges.

¶ 33    The remaining attached documents prepared before People's trial allege Detective Halloran engaged in physical abuse and coerced individuals to falsely confess. The relevant question when determining whether evidence of prior allegations of police misconduct is admissible is: do the prior allegations involve the same officer and the similar methods, and are they close in time to the allegations in the case before the court. People v. Porter-Boens, 2013 IL App (1st) 111074, 118. When the allegations are not similar or unduly remote, they will not be allowed in. Id.

¶ 34    The documents provided by Peoples contain allegations against Detective Halloran that are dissimilar to the allegation in petitioner's case. Peoples never alleged any physical abuse on the part of Detective Halloran, nor did he allege that he was coerced into falsely confessing.

13

Rather, Peoples claims that Detective Halloran fabricated petitioner's oral confession. The allegations are too different and therefore, these documents would not be admissible.

¶ 35　　Assuming for the sake of argument that counsel's failure to obtain or introduce evidence of Halloran's prior misconduct was unreasonable, Peoples still could not establish the prejudice to support a claim of ineffective assistance of counsel. Powers identified defendant in a photo array and a subsequent lineup. She also identified him in open court. A single eyewitness identification can support a conviction if the witness is credible and viewed the accused under circumstances permitting a positive identification. People v. Lewis, 165 Ill. 2d 305, 356 (1995). Powers was a credible witness and viewed Peoples in circumstances allowing for a positive identification. Powers identified Peoples three separate times following the offense in question. Her testimony alone was sufficient to convict Peoples.

¶ 36　　Peoples has failed to show that his attorney's failure to investigate or impeach Halloran with "available" evidence resulted in any prejudice to him. For that reason, I would affirm the court's denial of People's postconviction petition.