**2023 IL 127952**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 127952)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v.
WAYNE WASHINGTON, Appellant.

*Opinion filed July 18, 2023.*

JUSTICE O'BRIEN delivered the judgment of the court, with opinion.

Justices Neville, Holder White, and Cunningham concurred in the judgment and opinion.

Justice Rochford specially concurred, with opinion, joined by Chief Justice Theis and Justice Overstreet.

**OPINION**

¶ 1 Petitioner Wayne Washington pleaded guilty to first degree murder after Chicago police officers coerced a false confession from him. After petitioner served his sentence, his conviction was reversed and the charges against him dismissed.

Petitioner sought a certificate of innocence, the Cook County circuit court denied his petition, and the appellate court affirmed the denial. 2021 IL App (1st) 163024. We reverse both the appellate court and the trial court, finding that the statute does not impose a categorical bar precluding petitioners who pleaded guilty. We further find that this petitioner did not cause or bring about his conviction by pleading guilty.

¶ 2                                    BACKGROUND

¶ 3        Petitioner was arrested in May 1993 along with Tyrone Hood, and they were both charged with the armed robbery and murder of Marshall Morgan Jr. Petitioner was 19 years old at the time and had no criminal record. He claims City of Chicago police detectives John Halloran, Kenneth Boudreau, and James O'Brien, subordinates of infamous Chicago police detective Jon Burge, handcuffed petitioner to a chair, interrogated him, beat him, and kicked over his chair while he remained handcuffed to it. They also subjected him to psychological abuse. After being detained for more than a day and a half, petitioner signed a prewritten statement and falsely confessed to the murder.

¶ 4        A jury trial took place, which resulted in a hung jury and mistrial. Hood, who had not confessed, was then tried before the bench, convicted, and sentenced to a 75-year term of imprisonment. On the morning of petitioner's retrial, he saw Hood, who said he would pray for petitioner. Knowing he could not spend 75 years in prison, petitioner accepted the State's offer of a 25-year sentence in exchange for a guilty plea.

¶ 5        After a 2014 investigative article in *The New Yorker*, then-Governor Patrick Quinn commuted Hood's sentence. See Nicholas Schmidle, *Did the Chicago Police Coerce Witnesses Into Pinpointing the Wrong Man for Murder?*, The New Yorker (July 28, 2014), https://www.newyorker.com/magazine/2014/08/04/crime-fiction [https://perma.cc/7ST9-HE3V]. On February 9, 2015, the State, on its own motion, moved to vacate petitioner's and Hood's convictions and grant them new trials. The State then nol-prossed the charges against both petitioner and Hood pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2016)). Subsequently, petitioner and Hood each filed verified petitions for certificates of innocence setting forth nearly identical claims. Petitioner additionally claimed that

his guilty plea was coerced by way of physical abuse and incorrect or misleading information told to him by the police. The trial court denied the petitions but subsequently granted petitions for rehearing.

¶ 6     On rehearing, an evidentiary hearing on both petitions took place. The parties stipulated that the 46 exhibits attached to Hood's petition and adopted by petitioner were "deemed authentic and admissible into evidence for purposes of this matter." These documents included, in relevant part, the following.

¶ 7     An affidavit submitted by petitioner stated that, after he was arrested for Morgan's murder and told the police he knew nothing about it, the detectives began to beat him, slap him in the face, and push over the chair to which both of his wrists were handcuffed. The abuse continued throughout the day, and he was told he could not leave until he confessed. That night, he was given a prewritten confession and signed it because he "couldn't stand the beatings any longer." He further attested that he agreed to the plea deal because his codefendant was sentenced to 75 years in prison and petitioner calculated he could "still have a life" after prison if he took the State's deal.

¶ 8     Hood's affidavit provided that, during the criminal investigation, the detectives kicked, punched, choked, and pushed him to the ground, pointed a gun at his head, and demanded he confess.

¶ 9     Jody Rogers, a trial witness for the State, provided a statement that he was arrested and questioned about the murder and that, when he denied any knowledge of it, the detectives threatened to physically harm him and to charge him with Morgan's murder. He was questioned over two days by different teams of three detectives. One detective twisted his arm and pushed him around the interrogation room and up against the wall. Although he told the police and testified to the grand jury that he gave the murder weapon to Hood and heard Hood confess to Morgan's murder, he thereafter disavowed his statements. In a November 2008 affidavit, Rogers stated that his May 1993 statement implicating petitioner and Hood was untrue and that he recanted it in March 1994 but then testified against the petitioners so he could receive a deal from the State for pending charges. Rogers attested that he knew nothing about Morgan's murder and had no knowledge that petitioner and Hood were involved in it.

¶ 10     An affidavit submitted by another trial witness, Kenneth Crossley, also known as Michael Rogers, Jody's brother, provided that he testified in Hood's trial and implicated Hood and petitioner but did not know anything about Morgan's murder. He further attested that the officers who interviewed him told him he and Jody would be accused of the murder if he did not tell the detectives what they wanted to hear regarding petitioner and Hood. After he initially recanted his account, the detectives gave him gifts and money totaling $1000, and he then testified for the State. He again disavowed his testimony after Hood's trial.

¶ 11     A statement of Joe West, a suspect and trial witness against petitioner, provided that the detectives accused him of Morgan's murder and held him for an extended period of time, during which the detectives pointed a gun at various parts of his body and screamed at him, " 'you did it, we know you did it[;] just tell us how it happened.' " The detectives demanded that he identify petitioner and Hood as involved in the murder, which he ultimately did so he could be released. He thereafter recanted his statement implicating petitioner and Hood.

¶ 12     Another suspect, Terry King, was hit by three detectives, who also "stepped on his penis," "threw him to the floor, stepped on his neck and put a gun in his mouth." The City of Chicago ultimately reached a settlement in King's civil action against it based on police misconduct.

¶ 13     A report from Richard Brzeczek, a former Chicago police superintendent and expert in police procedures, police practices, and wrongful convictions, prepared a report regarding the Morgan murder investigation for Hood's postconviction proceedings. He noted that Boudreau, Halloran, and O'Brien "have been previously identified as engaging in patterns of similar coercive conduct" and that two of them asserted their fifth amendment rights against self-incrimination in civil cases about coercing witnesses. In particular, Brzeczek's report mentions that Boudreau had been accused of physical abuse against detainees, including punching, slapping, and kicking them; using psychological coercion against detainees with reduced cognitive and mental abilities; and interrogating juveniles without an adult present.

¶ 14     The report also discounted the supposed inculpatory statements provided by the Rogers brothers, West, and petitioner as "disavowed as untrue prior to trial" and resulting from police coercion. He concluded his report with the finding that the "pattern of investigative malpractice on the part of these detectives is significantly

- 4 -

and obviously present in this investigation." Attached to Brzeczek's report was a *Chicago Tribune* article dated July 26, 2013, detailing that the Illinois Torture Inquiry and Relief Commission (TIRC) "found credible evidence that Chicago detectives," including Boudreau, tortured suspects to confess to murders they did not commit. Jason Meisner, *Commission Finds Evidence of Police Torture in 5 Convictions*, Chi. Trib. (July 26, 2013), https://www.chicagotribune.com/news/ct-xpm-2013-07-26-ct-met-burge-torture-20130726-story.html [https://perma.cc/CF3S-DZ8G].

¶ 15        Petitioner also submitted evidence of similar abusive conduct by Boudreau, Halloran, and O'Brien in more than 20 other cases. This evidence included allegations that the detectives held people in custody for extended periods, physically abused them, threatened to bring charges against them, withheld food, and denied access to counsel. Other allegations of abuse by Boudreau and Halloran included being "hit in the face, stomach, and side, including with a flashlight," and "smacked on the face and head and punched in the ribs"; "interrogated for 36 hours" while being "slapped, kicked, and punched in the face and body"; "handcuffed to a wall, beaten and electro-shocked" by Boudreau and O'Brien; "grabbed *** by the neck" and forced to make a particular identification in a lineup by O'Brien; "forcefully grabbed *** by the neck and choked" by Boudreau; and "kicked and slapped about the face and body and choked during 30 hours of interrogation" by Boudreau, O'Brien, and Halloran.

¶ 16        Excerpts of deposition testimony of Boudreau, Halloran, and O'Brien from a civil action brought against the City of Chicago were included as exhibits and established that Halloran and O'Brien have invoked their fifth amendment rights in the civil cases against them, including regarding whether they abused petitioner and beat him into confessing. The detectives also took the fifth regarding abuse of Hood, Jody Rogers, and West. Halloran asserted the fifth amendment when asked whether he struck petitioner while interrogating him, struck Hood and Jody Rogers, pointed a gun at Hood's head during the interrogation, saw another detective point a gun at Hood's head, and fabricated an incriminating statement by Hood. O'Brien asserted the fifth amendment regarding whether he struck West and Hood, saw Halloran strike West, saw injuries on Hood's face during the interrogation, pointed a gun at Hood, fabricated an incriminating statement by Hood, and saw Boudreau

repeatedly beat Hood and whether he, Halloran and Boudreau talked about persuading Hood to falsely confess.

¶ 17         Petitioner testified that he was at a convenience store when police officers arrested Hood and asked petitioner to go to the police station to be questioned. They "wrestled" him into the squad car, where Hood was also secured. Both men were taken to the police station, and petitioner was locked in an interrogation room for 4½ hours. He and Hood were then taken to a different police station. At that time, Hood looked like he had been beaten. At the second police station, petitioner was again handcuffed to both arms of a chair and left for a couple of hours. Boudreau then began to question him about the murder, and when petitioner said he did not have any information or know anything about the murder, the detective pushed and slapped him around, knocked the chair over repeatedly, and interrogated him to provide information about the murder. The officers repeated what others had told them and told petitioner the information had earned their release. The detectives told him that, if he said the right things, he, too, could go home. He then signed a false confession.

¶ 18         Petitioner offered the following explanation for why he pleaded guilty:

"I had just went through a hung jury, and to [be] perfectly honest, sir, waiting on my jury to deliberate, I physically got sick. I couldn't put myself through it no more, and I couldn't imagine spending 75 years in the penitentiary for a crime I didn't do.

So when the deal for 25 years was offered to me, I calculated, with the time I had served in the Cook County Department of Corrections, I would be 32 years old when I came home. I still had a chance at a life. So I weighed out my options, and I felt like that 25 years was the lesser of two evils."

¶ 19         Hood also testified. He denied any knowledge of or role in Morgan's murder. He described the physical and verbal abuse he suffered while in custody for the murder. The first time he was questioned on May 22, 1993, he was kicked, choked, punched, slapped in the head, and had a gun placed in his face. When he was brought in the second time, along with petitioner, he said there was "a little physical abuse."

¶ 20    The parties further stipulated regarding witness testimony. James Mullinex would testify consistent with his affidavit statements that he was Hood's attorney in the criminal proceedings and there was no disclosure to the defense of payments to Michael Rogers or of police abuse and misconduct accusations. Brzeczek would testify consist with his report.

¶ 21    Following the close of evidence at the certificate of innocence hearing, the trial court asked for extrarecord materials from the underlying criminal actions. Both petitioner and Hood objected. At a subsequent hearing, the court informed the parties that it wanted the extrarecord documents. It told the petitioners that they were asking the court to "rule on something in a vacuum and just a partial record and partial transcripts." The court requested the report of proceedings from petitioner's motion to suppress hearing and from petitioner's and Hood's criminal trials.

¶ 22    The trial court thereafter denied both petitioner's and Hood's petitions for certificates of innocence. They each appealed. In Hood's case, the appellate court reversed and remanded, ordering the trial court to grant a certificate of innocence. *People v. Hood*, 2021 IL App (1st) 162964, ¶ 43. In petitioner's case, the appellate court, in a 2-to-1 decision, affirmed the trial court's denial of the petition, noting that a defendant like petitioner who has pled guilty " 'cause[d] or [brought] about his or her conviction' " and is not entitled to a certificate of innocence. 2021 IL App (1st) 163024, ¶ 25 (quoting 735 ILCS 5/2-702(g)(4) (West 2016)). The appellate court further found petitioner's evidence that he did not bring about his conviction failed because "his testimony that his confession was the result of police coercion was not credible and was otherwise uncorroborated." *Id.* ¶ 26. The appellate court determined that the trial court "was entitled to give whatever weight it deemed appropriate" to the testimonial and documentary evidence petitioner offered in support of his petition. *Id.* The court further stated: "Clearly, the circuit court was not required to accept [petitioner's] hearing testimony on its face and his previous contradictory sworn testimony when he entered his guilty plea cannot be ignored." *Id.* Presiding Justice Walker dissented, arguing that evidence of coercion was more plentiful than the appellate majority claimed and that petitioner met all the requirements for issuance of a certificate of innocence. See *id.* ¶¶ 34-51 (Walker, P.J., dissenting).

¶ 23    This court granted petitioner's petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. Oct. 1, 2021).

¶ 24                                    ANALYSIS

¶ 25    The issue for this court to determine is whether petitioner is entitled to a certificate of innocence. To make that determination, we must first decide whether a guilty plea by an innocent petitioner categorically prohibits issuance of a certificate of innocence. If we find there is no categorical bar, we must decide whether this petitioner's guilty plea nonetheless prohibits him from obtaining a certificate of innocence because he voluntarily caused or brought about his conviction with his guilty plea. We find the statute does not contain a categorical bar and that petitioner established the requirements necessary to obtain a certificate of innocence.

¶ 26    We turn to the first issue for our determination, whether the statute places a categorical bar precluding petitioners who pleaded guilty from receiving a certificate of innocence. Petitioner argues that the statute does not categorically preclude petitioners who pleaded guilty and that he satisfied the statutory requirements to obtain a certificate of innocence. He maintains that the appellate court's decision conflicts with the intent of the statute in that it (1) creates an additional obstacle to obtaining a certificate of innocence, (2) denies relief to innocent petitioners whose guilty plea resulted through no fault of their own, and (3) excludes innocent petitioners from accessing services that accompany the issuance of a certificate of innocence.

¶ 27    The issue of whether the First District erred in construing the statute as a categorical bar is a matter of statutory construction. In construing a statute, our primary goal is to ascertain and give effect to the legislative intent as evidenced by the plain and ordinary meaning of the statutory language. *People v. Palmer*, 2021 IL 125621, ¶ 53. Where the statutory language is clear and unambiguous, we interpret it without aids of construction and do not read into it "exceptions, limitations, or conditions that the legislature did not express." *People v. Legoo*, 2020 IL 124965, ¶ 14. Our review is *de novo*. *Palmer*, 2021 IL 125621, ¶ 53.

¶ 28    The certificate of innocence statute provides, in pertinent part:

"(a) The General Assembly finds and declares that innocent persons who have been wrongfully convicted of crimes in Illinois and subsequently imprisoned have been frustrated in seeking legal redress due to a variety of substantive and technical obstacles in the law and that such persons should have an available avenue to obtain a finding of innocence so that they may obtain relief through a petition in the Court of Claims. ***

(b) Any person convicted and subsequently imprisoned for one or more felonies by the State of Illinois which he or she did not commit may, under the conditions hereinafter provided, file a petition for certificate of innocence in the circuit court of the county in which the person was convicted. The petition shall request a certificate of innocence finding that the petitioner was innocent of all offenses for which he or she was incarcerated.

* * *

(f) In any hearing seeking a certificate of innocence, the court may take judicial notice of prior sworn testimony or evidence admitted in the criminal proceedings related to the convictions which resulted in the alleged wrongful incarceration, if the petitioner was either represented by counsel at such prior proceedings or the right to counsel was knowingly waived.

(g) In order to obtain a certificate of innocence the petitioner must prove by a preponderance of evidence that:

(1) the petitioner was convicted of one or more felonies by the State of Illinois and subsequently sentenced to a term of imprisonment, and has served all or any part of the sentence;

(2)(A) the judgment of conviction was reversed or vacated, and the indictment or information dismissed ***;

(3) The petitioner is innocent of the offenses charged in the indictment or information ***; and

(4) the petitioner did not by his or her own conduct voluntarily cause or bring about his or her conviction." 735 ILCS 5/2-702(a), (b), (f), (g) (West 2016).

¶ 29 In affirming the trial court's denial of the petition for a certificate of innocence, the appellate court majority fashioned a blanket rule that a defendant who pleads guilty is not entitled to a certificate of innocence, determining that "[a] defendant who has pled guilty 'cause[d] or [brought] about his or her conviction.' " 2021 IL App (1st) 163024, ¶ 25 (quoting 735 ILCS 5/2-702(g)(4) (West 2016)). It further stated that the court saw "no other way to interpret this provision." *Id.* At the outset, we reject the State's assertion that the court did not in fact create a categorical bar that operates to restrict a petitioner from obtaining a certificate of innocence. The State is simply incorrect. The First District majority explicitly stated:

> "The plain and ordinary meaning of 2-702(g)(4) is clear. A defendant who has pled guilty 'cause[d] or [brought] about his or her conviction' (735 ILCS 5/2-702(g)(4) (West 2016)) and is not entitled to a certificate of innocence. [Citation.] We see no other way to interpret this provision." *Id.*

¶ 30 Turning to the substance of the appellate majority's opinion, we find nothing in the plain language of the certificate of innocence statute that precludes plea petitioners from obtaining a certificate of innocence. The legislative intent, as expressed in the plain language of the statute, does not reflect a blank prohibition precluding petitioners convicted based on guilty pleas. The legislature expressed its intent in the statute, stating the statutory purpose as threefold: (1) to sweep away technical obstacles, (2) to preclude certificates to those petitioners who voluntarily caused or brought about their convictions, and (3) to provide resources and compensation for innocent people wrongly incarcerated. 735 ILCS 5/2-702 (West 2016). Rather than preclude plea petitioners, the legislature focused on the voluntariness of a petitioner's conduct in causing or bringing about his conviction. The statute looks at the petitioner's conduct, that is, whether he voluntarily caused or brought about his conviction, not whether he pleaded guilty. A petitioner who pleaded guilty might not have caused or brought about his conviction. The appellate court's ruling eliminates from this group any petitioners who pleaded guilty, and its conclusion conflicts with the statute's plain language and its intent.

¶ 31 Our holding is consistent with several decisions that have employed a broad interpretation to further the purposes of the statute. This court recently rejected a restrictive reading of the statute, reasoning that it would defeat the legislative intent by imposing "a technical legal obstacle." *Palmer*, 2021 IL 125621, ¶ 65. In *Palmer*,

the State raised a new theory at the hearing on defendant's petition for a certificate of innocence, arguing that the defendant acted as an accomplice rather than the principal in a murder where DNA ruled him out as the perpetrator. *Id.* ¶¶ 47-48. The trial court allowed the State to present its new theory, and the appellate court affirmed. *Id.* ¶ 48. This court found the lower courts' interpretation created additional obstacles to petitioners seeking certificates of innocence in direct contrast to the legislative purpose of the statute. *Id.* ¶ 65. The statute is designed to "ameliorate, not impose, technical and substantive obstacles." *Id.* ¶ 68.

¶ 32    In *People v. Glenn*, 2018 IL App (1st) 161331, the reviewing court also employed an expansive reading of the statute. In that case, the court considered whether the statute's language requiring a petitioner to be sentenced to a term of imprisonment precluded petitioners who were sentenced to terms of probation from obtaining certificates of innocence. *Id.* ¶ 16. It interpreted the term imprisonment to include petitioners who were sentenced to probation. *Id.* ¶ 19. The court concluded its broad interpretation preserved the intent of the statute "to seek relief from the State for wrongful imprisonment." *Id.* ¶ 20.

¶ 33    In *People v. Reed*, 2020 IL 124940, ¶ 24, this court considered whether defendants who pleaded guilty waived any claims of actual innocence under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2016)). In determining the issue before it, the *Reed* court "consider[ed] the motives behind and consequences of a plea in light of the precise challenge asserted by an actual innocence claim." *Reed*, 2020 IL 124940, ¶ 24. The court engaged in a discussion regarding guilty pleas, their role in the criminal justice system, and their effect on a subsequent claim of actual innocence. *Id.* ¶¶ 25-35. While noting that plea agreements are "vital to our criminal justice system," this court acknowledged that guilty pleas "are not structured to 'weed out the innocent' or guarantee the factual validity of the conviction." *Id.* ¶ 33 (quoting *Schmidt v. State*, 909 N.W.2d 778, 788 (Iowa 2018)). We concluded that a guilty plea does not bar a defendant who pleaded guilty from pursuing a claim of actual innocence in postconviction proceedings. *Id.* ¶ 41.

¶ 34    The same result is warranted here. The First District's restrictive reading of the statute does not align with the statutory language or legislative intent. By precluding innocent petitioners who pleaded guilty, whether or not they voluntarily caused or

brought about their convictions, the courts' ruling imposes both technical and substantive obstacles. Not only does that interpretation conflict with the legislative intent, it also conflicts with numerous decisions of lower courts that have issued certificates of innocence to petitioners who pleaded guilty. Petitioner provided information that at least 77 people who had been convicted and imprisoned in Illinois based on guilty pleas have received certificates of innocence. The appellate court's proclamation that a guilty plea precludes a petitioner from obtaining a certificate of innocence is not supported by the statutory language or intent. The reviewing court should not have read into the statute limitations the legislature did not express. See *Legoo*, 2020 IL 124965, ¶ 14.

¶ 35        Had the legislature wanted to categorically preclude petitioners who had pleaded guilty from obtaining a certificate of innocence, it would have added that language to the statute. Other states have specifically provided that certificates of innocence are not available to those who entered guilty pleas. See, *e.g.*, Iowa Code § 663A.1(1)(b) (2023) (requiring that petitioner "did not plead guilty"); Mass Gen. Laws, ch. 258D, § 1(C)(iii) (2020) (same); Ohio Rev. Code Ann. § 2743.48(A)(2) (West 2017) (same); Okla. Stat., tit. 51, § 154(B)(2)(b) (2021) (same); D.C. Code § 2-425 (2020) (same); Fla. Stat. § 961.04(1)-(4) (2020) (same); Va. Code Ann. § 8.01-195.10(B) (2022) (same). Some states have expressly excluded the word "voluntarily," precluding petitioners who brought about or caused their conviction without consideration of volition or fault. See N.Y. Ct. Cl. Act § 8-b(4)(b) (2019) ("he did not by his own conduct cause or bring about his conviction"); N.J. Stat. Ann. § 52:4C-3(c) (West 2021) ("did not *** by his own conduct cause or bring about his conviction"); D.C. Code § 2-425 (2022) (precluding "any person whose conviction resulted from his entering a plea of guilty"); Md. Code Ann. State Fin. & Proc. § 10-501(b)(1)(4) (LexisNexis 2021) ("did not *** by the individual's own conduct cause or bring about the conviction"); Mont. Code Ann. § 46-32-104(5)(b) (2021) ("did not *** by the claimant's own conduct cause or bring about the conviction").

¶ 36        Accordingly, we find both the trial court and the appellate court misconstrued the statute, read into it limitations not supported by the plain language, and erred in limiting the category of innocent petitioners who are entitled to a certificate of innocence. We hold that petitioners who pleaded guilty are not categorically barred from seeking certificates and the appellate court erred in so finding.

¶ 37 Having determined there is no categorical bar, we now address the trial court's ruling and the appellate court's finding that this petitioner did not satisfy the statutory requirements for a certificate of innocence. The trial court rejected petitioner's request for a certificate on the basis that he confessed to Morgan Jr.'s murder and pleaded guilty, thus, in the court's view, voluntarily causing or bringing about his conviction. 2021 IL App (1st) 163024, ¶ 23. The appellate court affirmed, finding that, because petitioner did not establish that his confession was coerced, he voluntarily brought about his conviction by pleading guilty. *Id.* ¶ 26.

¶ 38 Petitioner urges this court to adopt both the reasoning of Presiding Justice Walker in the dissent, which found he did not voluntarily cause or bring about his conviction because his guilty plea directly resulted from his coerced confession, and the dissent's standard to assess whether a petitioner "voluntarily caused or brought about a conviction," which focuses on whether the petitioner "culpably misled police or other officials." *Id.* ¶ 48 (Walker, P.J., dissenting).

¶ 39 The majority in the appellate court relied on *People v. Amor*, 2020 IL App (2d) 190475, to support the finding that petitioner voluntarily caused or brought about his conviction. *Amor*, however, is distinguishable. There, the defendant confessed but did not raise claims of police abuse. *Id.* ¶ 12. After his conviction was vacated as postconviction relief, a second trial took place, where evidence was presented that the crime could not have been committed in the manner in which the defendant confessed it did, and the court found the defendant not guilty. *Id.* ¶¶ 6, 8. Petitioner then sought a certificate of innocence, which the trial court dismissed on the State's motion. *Id.* ¶ 9. The trial court looked at whether the defendant voluntarily caused or brought about his conviction and found he did, noting the defendant's confession, although unreliable, was not the product of " 'illegal police conduct.' " *Id.* ¶ 12. The reviewing court considered whether the defendant acted or failed to act in such a way that " 'mis[led] the authorities as to his culpability' " and found he did. *Id.* ¶ 16 (quoting *Betts v. United States*, 10 F.3d 1278, 1285 (7th Cir. 1993)).

¶ 40 In the appellate court decision, the dissent offers a similar standard to determine whether a petitioner voluntarily caused or brought about his conviction. The dissent submits that a certificate should be barred under section 2-702(g)(4) " 'only if the accused can be blamed for his conduct—if he has through his own reprehensible behavior invited the attentions of the police or made necessary his detention.' "

2021 IL App (lst) 163024, ¶ 48 (Walker, P.J., dissenting) (quoting Anders Bratholm, *Compensation of Persons Wrongfully Accused or Convicted in Norway*, 109 U. Pa. L. Rev. 833, 837-38 (1961)). The dissent further submits that a petitioner's false confession or guilty plea should "foreclose relief only when the person falsely accused culpably misled police or other officials." *Id.* Based on those principals, the dissent concluded that, because petitioner initially denied any participation in or knowledge about Morgan's murder, only confessed after police abuse, went to trial and pleaded not guilty, and agreed to the plea only after his innocent codefendant was sentenced to a *de facto* life sentence, he did not culpably mislead the police. *Id.* ¶ 49.

¶ 41    The dissent's reasoning aligns with the goal of the statute, to provide a remedy for people who were wrongly convicted. Nevertheless, we do not adopt the dissent's standard that the petitioner "culpably misled police" to determine whether a defendant voluntarily caused or brought about his conviction. The statutory language requires that the petitioner's conduct did not "*voluntarily* cause or bring about" the conviction. (Emphasis added.) 735 ILCS 5/2-702(g)(4) (West 2016). The plain meaning of "voluntary" is "[r]esulting from free choice, without compulsion or solicitation." Black's Law Dictionary 1575 (6th ed. 1990). In contrast, "culpable" conduct means "[b]lamable" and "at fault." *Id.* at 379. Although the definitions are similar, they are not the same. Had the legislature meant to focus on the petitioner's culpability rather than his voluntary conduct, it would have written the statute accordingly.

¶ 42    The State asserts that the fifth amendment standard of voluntariness should inform the definition. "The constitutional test for the admission of a confession in evidence is whether the confession was made freely, voluntarily and without compulsion or inducement of any sort." *People v. Davis*, 35 Ill. 2d 202, 205 (1966). Under the fifth amendment (U.S. Const., amend. V), where a confession is "obtained by force or brutality," it is not voluntary and cannot be admitted. *Davis*, 35 Ill. 2d at 205. To determine the voluntariness of a confession, the court considers the totality of the circumstances. *People v. Richardson*, 234 Ill. 2d 233, 253 (2009). Petitioner contends that the fifth amendment standard does not sufficiently protect an innocent petitioner. He points to a number of convictions based on guilty pleas that were later exonerated as support that the fifth amendment standard conflicts with the statute's remedial nature. In our view, voluntariness should be made

considering the totality of the circumstances on a case-by-case basis in light of the remedial purpose of the statute.

¶ 43 The aim of the statute is to provide a certificate of innocence to petitioners who are innocent of the crimes for which they were convicted. A certificate of innocence is issued "to benefit 'men and women that have been falsely incarcerated through no fault of their own.' " *People v. Dumas*, 2013 IL App (2d) 120561, ¶ 19 (quoting 95th Ill. Gen. Assem., House Proceedings, May 18, 2007, at 12 (statements of Representative Flowers)). In *Dumas*, the reviewing court considered whether the petitioner had "voluntarily caused or brought about his conviction." *Id.* ¶ 14. The petitioner's conviction was reversed on appeal for insufficiency of evidence to sustain it, and he then sought and was denied a certificate of innocence. *Id.* ¶¶ 11-12. The reviewing court affirmed the trial court's finding that petitioner failed to establish he did not cause or bring about his conviction where he actively arranged a potential drug sale that ultimately resulted in his conviction. *Id.* ¶ 19. Although the denial of the petition for a certificate of innocence was affirmed, the court noted that a petitioner must show "that he is actually innocent and that he did not act in a way that brought about his conviction." *Id.*

¶ 44 In *People v. McClinton*, 2018 IL App (3d) 160648, ¶ 21, the appellate court found that, because the statute under which the petitioner was convicted was found unconstitutional, the petitioner did not cause or bring about her conviction. The appellate court reasoned that, because the statute criminalizing the petitioner's conduct was void, her actions that resulted in her conviction were not criminal when she committed them and she did not "intentionally cause or bring about her conviction." *Id. McClinton* bolsters the intent of the legislature to broadly construe the statute for petitioners who did not voluntarily cause or bring about their convictions to provide an "available avenue to obtain a finding of innocence." 735 ILCS 5/2-702(a) (West 2016).

¶ 45 The State's and the lower courts' interpretation of "voluntary" conflicts with the intent of the statute and does not sufficiently safeguard an innocent petitioner who confessed or pleaded guilty through no fault of his own, for example, due to police coercion. The express legislative intent of the statute is to eliminate "substantive and technical obstacles" for persons who have been wrongly convicted and imprisoned for crimes they did not commit. *Id.* Contrary to the express aim of

the statute, the appellate decision creates obstacles to obtain a certificate of innocence and the services and opportunities the certificate provides for innocent persons who plead guilty to crimes they did not commit. 2021 IL App (1st) 163024, ¶ 50 (Walker, P.J., dissenting) ("The majority's denial of that assistance continues the difficulty associated with the too many wrongful accusations against black and brown people.").

¶ 46       The statute sets forth the following procedure to submit a petition:

"(c) In order to present the claim for certificate of innocence of an unjust conviction and imprisonment, the petitioner must attach to his or her petition documentation demonstrating that:

(1) he or she has been convicted of one or more felonies by the State of Illinois and subsequently sentenced to a term of imprisonment, and has served all or any part of the sentence; and

(2) his or her judgment of conviction was reversed or vacated, and the indictment or information dismissed or, if a new trial was ordered, either he or she was found not guilty at the new trial or he or she was not retried and the indictment or information dismissed; *** and

(3) his or her claim is not time barred by the provisions of subsection (i) of this Section.

(d) The petition shall state facts in sufficient detail to permit the court to find that the petitioner is likely to succeed at trial in proving that the petitioner is innocent of the offenses charged in the indictment or information ***, and the petitioner did not by his or her own conduct voluntarily cause or bring about his or her conviction. The petition shall be verified by the petitioner." 735 ILCS 5/2-702(c), (d) (West 2016).

¶ 47       We are aware of the split in authority regarding the appropriate standard of review to be applied to certificate of innocence determinations. Compare *People v. Rodriguez*, 2021 IL App (1st) 200173, ¶ 44 (describing use of abuse of discretion standard to review certificate of innocence determinations as "well settled"), with *People v. McIntosh*, 2021 IL App (1st) 171708, ¶ 40 ("the appropriate standard of appellate review in a certificate of innocence case is manifest weight of the

evidence"). We emphasize that neither party has raised, briefed, or argued this split in authority here on appeal. Instead, the State simply asserts, without analysis, that "[i]t is well settled that the determination of whether a petitioner is entitled to a certificate of innocence is committed to the discretion of the circuit court." *Rodriguez*, 2021 IL App (1st) 200173, ¶ 44. Petitioner does not challenge the State's assertion. Under the specific facts of this case, we determine that we need not decide which standard of review applies because under either standard (abuse of discretion or manifest weight of the evidence), petitioner is entitled to a certificate of innocence.

¶ 48       The special concurrence, however, believes that we should resolve the conflict as to the appropriate standard of review. Specifically, it states: "One of the most important functions of this court is to resolve conflicts in the appellate court and thereby ensure uniform application of the law throughout the state." *Infra.* ¶ 71. We do not disagree with this *general* premise. However, we do not believe courts of review should resolve questions of law that are not raised, briefed, and argued by the parties. Simply put, the issue the special concurrence wishes us to answer was not raised, briefed, or argued by either party here in the supreme court. Nor was the issue presented in petitioner's petition for leave to appeal. Nor was the issue presented below on direct appeal or analyzed by the appellate court. Considering these facts, along with the fact that petitioner is entitled to relief under either standard, we believe that the appropriate approach in the instant case is to refrain from addressing unbriefed issues.

¶ 49       The special concurrence is correct that resolving conflicts in the appellate court is one of this court's greatest responsibilities, a responsibility that carries broad and far-reaching implications. Specifically, when this court makes a pronouncement as to the proper interpretation of an Illinois statute or the correct interpretation with respect to a disputed area of Illinois case law, the appellate court and all circuit courts in this state are bound by such pronouncement. And it is precisely for this reason that we must exercise this great responsibility narrowly, cautiously, and judiciously. Addressing issues or questions not properly raised and argued by the parties violates this charge. This court, quoting the United States Supreme Court, previously addressed the propriety of the very act that the special concurrence now requests that we engage in.

" 'In our adversary system, in both civil and criminal cases, in the first instance and on appeal, we follow the principle of party presentation. That is, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present. To the extent courts have approved departures from the party presentation principle in criminal cases, the justification has usually been to protect a *pro se* litigant's rights. [Citation.] But as a general rule, "[o]ur adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief." [Citation.] As cogently explained:

"[Courts] do not, or should not, sally forth each day looking for wrongs to right. We wait for cases to come to us, and when they do we normally decide only questions presented by the parties. Counsel almost always know a great deal more about their cases than we do ***." [Citation.]' " *People v. Givens*, 237 Ill. 2d 311, 323-34 (2010) (quoting *Greenlaw v. United States*, 554 U.S. 237, 243-44 (2008)).

¶ 50    Turning back to the issues that were properly raised in the appellate court and that are raised again before this court in the parties' briefs, there are four statutory requirements a petitioner must satisfy to be entitled to a certificate of innocence, in relevant part: (1) the petitioner was convicted of one or more felonies, sentenced to prison, and served all or part of the sentence; (2) the judgment of conviction was reversed or vacated, and the indictment or information was dismissed; (3) defendant is innocent of the charged offenses; "and (4) the petitioner did not by his or her own conduct voluntarily cause or bring about his or her conviction." 735 ILCS 5/2-702(g)(1)-(4) (West 2016). A petitioner bears the burden to prove the requirements by a preponderance of the evidence. *Id.*; *Dumas*, 2013 IL App (2d) 120561, ¶ 19. The court must consider the materials attached to the petition in determining whether to issue a certificate of innocence. *People v. Fields*, 2011 IL App (1st) 100169, ¶ 19.

¶ 51    The first three requirements are not at issue. As to the fourth requirement, the trial court found, and the appellate court affirmed, that petitioner failed to show that by his acts or conduct he did not voluntarily cause or bring about his conviction. The reviewing court deferred to the trial court's discretion regarding its conclusion that petitioner lacked credibility. The trial court questioned petitioner's credibility

only after it reviewed transcripts from the underlying criminal proceedings, which it sought, *sua sponte*, after the close of evidence. Against petitioner's objections, the court reviewed the report of proceedings from below, concluded that petitioner was not credible, and used the credibility assessment to deny his petition for a certificate of innocence, finding petitioner did not establish his claims of police coercion. On appeal, petitioner challenges the trial court's use of unsubmitted extrarecord material from the underlying criminal proceedings. The State concedes that the trial court erred in its use of the record below without allowing petitioner an opportunity to respond and urges this court to remand for an evidentiary hearing where petitioner can demonstrate the involuntariness of his plea under a totality of the circumstances.

¶ 52    We find the trial court improperly used its authority under the certificate of innocence statute to assess defendant's credibility. The statute only allows the trial court to take "judicial notice of prior sworn testimony or evidence admitted in the criminal proceedings." 735 ILCS 5/2-702(f) (West 2016). Judicial notice is properly taken of adjudicative facts, which are facts that are not "subject to reasonable dispute in that [they are] either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Ill. R. Evid. 201(a), (b) (eff. Jan. 1, 2011). A credibility determination is not an adjudicative fact or a proper use of judicial notice.

¶ 53    Under the statute, the trial court was entitled to take judicial notice of the factual assertions presented in the transcripts from the underlying proceedings, for example, the fact that defendant testified. See, *e.g.*, *People v. Rivera*, 221 Ill. 2d 481, 516 (2006) (judicial notice that trial judge had retired); *People v. Whitfield*, 228 Ill. 2d 502, 514 (2007) (judicial notice of arguments raised in parties' briefs in lower court). The trial court could not, however, make credibility findings based on the matters of which it took judicial notice. *People v. Crawford*, 2013 IL App (1st) 100310, ¶ 125 (finding inappropriate judicial notice of the substance of expert's testimony "but not the *fact* that the expert testified," because the "expert's deposition was not undisputed" (emphasis in original)); *People v. Rubalcava*, 2013 IL App (2d) 120396, ¶ 34 (finding "court could take judicial notice of the findings in the memorandum decision" but "could not consider as substantive evidence against defendant the evidence summarized in the memorandum"); *Hood*, 2021 IL

- 19 -

App (1st) 162964, ¶ 32 (finding that section 2-702(f) "does not grant the court authority to independently research the record and history of the original criminal proceedings to inform and influence its judgment in the certificate of innocence proceeding"). We find the circuit court exceeded the scope of judicial notice in making its credibility finding based on testimony offered in the criminal proceeding.

¶ 54    The State did not participate in the certificate of innocence proceedings in the trial or appellate court; thus, the testimony offered by petitioner stands unrebutted, and the trial court should not have dismissed it outright based on its independent investigation into extrarecord evidence. The State seeks a remand for an evidentiary hearing so that petitioner can counter the evidence used by the court and present evidence in support of his claim that he did not voluntarily cause or bring about his conviction. Petitioner argues that this court should grant the certificate of innocence on the evidence presented, but if it does not, he agrees remand is appropriate. See Ill. R. Evid. 201(e) (eff. Jan. 1, 2011) (party entitled to "opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed").

¶ 55    Based on its improper consideration of the record from the underlying case, the trial court rejected petitioner's claims that his statement was coerced, finding the allegations were "vague and non-specific" and that he did not attach adequate documentary evidence that he was abused or that the detectives who purportedly coerced his confession had a history of abusive tactics. The court also found that petitioner's cost-benefit analysis resulting in his guilty plea did not invalidate his otherwise involuntary plea. The appellate court found that the trial court did not have "to credit Washington's explanation for why he pleaded guilty or ignore the fact that he never claimed his plea of guilty was anything but voluntary." 2021 IL App (1st) 163024, ¶ 26.

¶ 56    We disagree with both courts. Contrary to the view of the lower courts, petitioner presented unrebutted and compelling evidence of police coercion that resulted in him confessing to a crime he did not commit and subsequently agreeing to plead guilty to it. When finding the trial court was within its realm of discretion to consider petitioner's testimony below, the appellate court relied on *People ex rel. Brown v. Baker*, 88 Ill. 2d 81, 85 (1981). 2021 IL App (1st) 163024, ¶ 26. However, *Brown* supports petitioner. The *Brown* court stated that unrebutted testimony may

be disregarded when "contradicted," "inherently improbable," or "impeached." *Brown*, 88 Ill. 2d at 85. The reviewing court here does not explain how petitioner's unrebutted evidence was contradicted, inherently improbable, or impeached. Moreover, it was none of the three, especially in light of the State's absence as an adversary at the proceedings below. The courts below were not free to reject the petitioner's evidence. See *McIntosh*, 2021 IL App (1st) 171708, ¶ 65 (State's silence during certificate of innocence proceedings left all of the defendant's "arguments unchallenged and unrebutted," putting the "case on a markedly different footing than that in an ordinary postconviction appeal"). The *Hood* court addressed the State's lack of participation in that case in light of Hood's similarly unrebutted testimony detailing the abusive police tactics. *Hood*, 2021 IL App (1st) 162964, ¶ 34. The court considered that the State did not offer contrary evidence and petitioner's testimony was "not impeached, contradicted or inherently improbable." *Id.* The appellate court concluded that "[w]ith no contrary evidence presented at the hearing, and with the State refusing to participate, the circuit court was not free to disregard Hood's testimony." *Id.* ¶ 42. The *Hood* court found, in part, that the trial court erred when it ignored Hood's uncontested testimony. *Id.* ¶ 43.

¶ 57        Petitioner's unrebutted evidence established that the detectives isolated him, handcuffed him to his chair, kicked his chair over, and pushed and slapped him. He signed the prewritten confession because the officers told him he could go home if he did and because he could no longer withstand the physical and psychological abuse. He was interrogated by detectives who undisputedly engaged in coercive conduct at best and torture at worst. See *People v. Plummer*, 2021 IL App (1st) 200299, ¶ 90 (TIRC found credible evidence in investigation of claims defendant subjected to abusive police tactics during interrogation by Boudreau and Halloran); *People v. Peoples*, 2020 IL App (1st) 161068-U, ¶ 9 (listing 16 other cases involving abuse of defendants by Halloran).

¶ 58        "Where the testimony of a witness is neither contradicted, either by positive testimony or by circumstances, nor inherently improbable, and the witness has not been impeached, that testimony cannot be disregarded even by a jury." *Brown*, 88 Ill. 2d at 85. The unrebutted evidence establishes police abuse, and the lower courts were not free to ignore it. Along with petitioner and Hood, the witnesses against petitioner in the criminal proceedings, the Rogers brothers and West, attested that

they, too, were victims of abuse from the detectives in this case, resulting in their false accusations against petitioner, statements they later recanted. Another suspect, King, also reported abuse by the detectives and brought a complaint against the City of Chicago based on the abuse he suffered. The record includes evidence of similar abusive conduct by Boudreau, Halloran, and O'Brien in more than 20 other cases. This evidence included allegations that the detectives held people in custody for extended periods, physically abused them, threatened to bring charges against them, withheld food, and denied access to counsel.

¶ 59    Because of the abusive and coercive conduct of the police, we cannot consider petitioner's confession as voluntary under either standard of voluntariness. See *Davis*, 35 Ill. 2d at 205 ("A confession obtained by force or brutality is not voluntary ***."). Once the State obtained his confession, petitioner understood that the evidence against him was substantial and, in light of Hood's sentence of 75 years' imprisonment imposed without a confession, opted to accept the State's plea offer so he could have a life to salvage after his release. See *Reed*, 2020 IL 124940, ¶ 33 ("it is well accepted that the decision to plead guilty may be based on factors that have nothing to do with defendant's guilt").

¶ 60    In denying petitioner a certificate of innocence, both the lower courts rejected petitioner's claims of police abuse. We find that petitioner provided substantial and unrebutted evidence that his confession was coerced and that the coercion animated his decision to plead guilty. Petitioner's confession and guilty plea were not voluntary and as such did not cause or bring about his conviction. Because petitioner demonstrated he did not voluntarily cause or bring about his conviction, we conclude an evidentiary hearing is not necessary. The evidence petitioner presented with his petition for a certificate of innocence and the evidence he offered at the hearing on his petition stand unrebutted, as noted above. The appellate court put form over substance and ignored the evidence that petitioner confessed due to coercion by the police, which confession led to his decision to plead guilty. The majority placed less emphasis on the claims of police misconduct than did the dissent, determining that petitioner was not credible in establishing that abusive police tactics caused him to confess. It did so in deference to the trial court's finding that petitioner was not credible, a finding that was based on the trial court's improper foray into the underlying record. The majority misconstrued the

considerable evidence supporting petitioner's claims of police coercion affecting the voluntariness of his confession and plea.

¶ 61 We reject the appellate court's finding that petitioners who plead guilty are barred from obtaining a certificate of innocence and that this petitioner failed to establish he did not voluntarily cause or bring about his conviction. We find that petitioner met the necessary statutory requirements to obtain a certificate of innocence by a preponderance of the evidence. He was convicted of a felony, sentenced to prison, and served his term (735 ILCS 5/2-702(g)(1) (West 2016)); his conviction was vacated and the charges against him dismissed (*id.* § 2-702(g)(2)); he is innocent of the charged offense (*id.* § 2-702(g)(3)); and he did not voluntarily cause or bring about his conviction (*id.* § 2-702(g)(4)). Based on the record before us, we conclude petitioner is entitled to a certificate of innocence.

¶ 62 In sum, we conclude that the plain language of the statute does not categorically bar an innocent petitioner who pleaded guilty from obtaining a certificate of innocence. Voluntariness is to be determined on a case-by-case basis considering the totality of the circumstances. Petitioner did not voluntarily cause or bring about his conviction and is entitled to a certificate of innocence.

¶ 63 CONCLUSION

¶ 64 Accordingly, for the foregoing reasons, we reverse the judgment of the appellate court, which affirmed the judgment of the trial court, and remand to the circuit court with directions to enter an order granting petitioner a certificate of innocence.

¶ 65 Reversed and remanded with directions.

¶ 66 JUSTICE ROCHFORD, specially concurring:

¶ 67 I agree with my colleagues that a guilty plea does not preclude someone from obtaining a certificate of innocence. I also concur in the majority's judgment reversing the appellate court and awarding petitioner a certificate of innocence. However, I do not join all of the majority's analysis, and I would reach the same

result for reasons other than those stated by the majority.

¶ 68                                    I. Standard of Review

¶ 69        The majority acknowledges that, if we were to set forth the standard of review
for a trial court's decision whether to grant or deny a certificate of innocence, we
would resolve a conflict in the appellate court. *Supra* ¶ 47. However, the majority
elects not to resolve the conflict because the parties have not raised this issue. *Supra*
¶ 47. Instead, the majority states that it will not set forth a standard of review
because it would reach the same result under either the manifest weight or the abuse
of discretion standard. *Supra* ¶ 47. That is certainly the court's prerogative, and I
respect my colleagues' decision.

¶ 70        I would set forth the standard of review as manifest weight of the evidence, and
I would do so for five reasons. First, a conflict exists on this issue in the appellate
court. Indeed, the conflict manifested itself in this very case. Compare 2021 IL App
(1st) 163024, ¶ 22 (setting forth abuse of discretion as the standard of review), with
*id.* ¶ 43 (Walker, P.J., dissenting) (setting forth manifest weight of the evidence as
the standard of review). Second, the correct standard is compelled by this court's
case law. Third, the majority of appellate court decisions employ an obviously
incorrect standard. Fourth, the standard the majority of appellate court decisions
employ is incompatible with the policies and purposes of the certificate of
innocence statute. Fifth, it is in the interest of judicial economy to set forth the
correct standard here.

¶ 71        It is one thing for the majority to decide not to set forth a standard of review. It
is quite another thing to say that it would be *improper* for the court to do so. See
*supra* ¶ 48. If I understand the majority's argument correctly, its position is that,
because a conflict exists on the standard of review and one party has set forth the
abuse of discretion standard and neither party has asserted that the manifest weight
standard applies, we should decline to set forth the standard. *Supra* ¶¶ 47-49. In my
view, the fact that setting forth the standard of review would resolve a conflict in
the appellate court militates *in favor of* setting forth the standard. One of the most
important functions of this court is to resolve conflicts in the appellate court and
thereby ensure uniform application of the law throughout the state. It does not
matter whether either party argued the correct standard of review. This court has an

obligation to set forth the correct standard regardless of what the parties argue. For instance, in *Evans v. Cook County State's Attorney*, 2021 IL 125513, ¶ 37, the petitioner argued that the standard of review for the issue under consideration was *de novo*. The State countered that the correct standard was manifest weight of the evidence. *Id.* ¶ 38. This court determined that both parties were incorrect and that the statutory language mandated abuse of discretion review. *Id.* ¶¶ 39-41. Clearly, then, the failure of either party to argue the correct standard does not preclude this court from identifying and applying the correct standard.

¶ 72    The majority claims that, were we to set forth a standard of review, we would be improperly resolving an unargued and unbriefed issue. *Supra* ¶ 49. In support, the majority cites *People v. Givens*, 237 Ill. 2d 311, 323-24 (2008), for the proposition that this court follows the "party presentation" principle and that courts should not "sally forth each day looking for wrongs to right." (Internal quotation marks omitted.) *Supra* ¶ 49 (quoting *Givens*, 237 Ill. 2d at 323-34, quoting *Greenlaw v. United States*, 554 U.S. 237, 244 (2008)). The majority asserts that *Givens* "addressed the propriety of the very act that the special concurrence now requests that we engage in." *Supra* ¶ 49. To be clear, the only act that I request the court to engage in is to set forth the standard of review for the issue under consideration. It should go without saying that it is never improper for a reviewing court to set forth the standard of review. *Givens* does not stand for the proposition that a court may not identify the correct standard of review unless the parties do so. When this court made the above comments in *Givens*, it was addressing the rule that " 'a reviewing court should not normally search the record for unargued and unbriefed reasons to reverse a trial court judgment.' " (Emphasis omitted.) *Givens*, 237 Ill. 2d at 323 (quoting *Saldana v. Wirtz Cartage Co.*, 74 Ill. 2d 379, 386 (1978)). In that case, the appellate court did not resolve the case based on any of the arguments that defendant raised. Rather, it searched the record, raised an issue *sua sponte* on defendant's behalf, and then reversed the defendant's conviction on that basis. *Id.* at 322-23. It was in that context that this court made the above comments. The concern in such a situation is that the parties are deprived of an opportunity to be heard on the issue. See *id.* at 324. This has nothing to do with standards of review. For every issue that a reviewing court decides, there is a proper standard of review. This standard determines the degree of deference that the reviewing court gives the trial court's findings and decision. A party is never deprived of an opportunity to be heard on the standard of review. Our rules *require* the appellant

to identify in its brief the standard of review for every issue (Ill. S. Ct. R. 341(h)(3) (eff. Oct. 1, 2020)), and the appellee is permitted to do so (Ill. S. Ct. R. 341(i) (eff. Oct. 1, 2020)). The rule of party presentation does *not* mean that a reviewing court is precluded from identifying the correct standard of review unless one of the parties does. Assume a situation in which a reviewing court is faced with a factual determination by the trial court and both parties argue that the standard of review is *de novo*. If what the majority says is correct, then a reviewing court would have no choice but to review the issue under the wrong standard of review. There is no such rule. When a reviewing court employs a different standard of review than that advocated by the parties, it is not violating the rule of party presentation or raising unargued and unbriefed issues. It is simply correcting an erroneous proposition of law. In sum, while it is certainly the majority's prerogative to decline to set forth the standard of review, there would be nothing improper about this court doing so.

¶ 73        I agree with *People v. McIntosh*, 2021 IL App (1st) 171708, that the proper standard of review is manifest weight of the evidence. The statute sets forth a list of facts that must be proven by a preponderance of the evidence (735 ILCS 5/2-702(g) (West 2020)) and provides that, if the petitioner proves his case, the court "shall" grant the certificate of innocence (*id.* § 2-702(h)). *McIntosh* pointed out that this court construed similar statutory language in *Best v. Best*, 223 Ill. 2d 342 (2006). *McIntosh*, 2021 IL App (1st) 171708, ¶ 39. The issue in *Best* was the standard of review for findings of abuse under the Domestic Violence Act of 1986 (Domestic Violence Act) (750 ILCS 60/101 *et seq.* (West 2004)). *Best*, 223 Ill. 2d at 344. The Domestic Violence Act provided that an order of protection "shall" issue if the court determines that the petitioner is abused (*id.* at 348 (quoting 750 ILCS 60/214(a) (West 2004))) and that the petitioner was required to prove her case by a preponderance of the evidence (*id.* (citing 750 ILCS 60/205(a) (West 2004))). This court explained:

"At this point, the standard of review for findings of abuse is self-evident. When a trial court makes a finding by a preponderance of the evidence, this court will reverse that finding only if it is against the manifest weight of the evidence. See, *e.g.*, *In re Faith B.*, 216 Ill. 2d 1, 13 (2005); *People v. Ballard*, 206 Ill. 2d 151, 177 (2002); *In re A.P.*, 179 Ill. 2d 184, 204 (1997)." *Id.* at 348-49.

¶ 74    *Best* noted that the statute at issue in *In re A.P.*, 179 Ill. 2d 184 (1997), also set forth a preponderance of the evidence standard for an abuse finding. *Best*, 223 Ill. 2d at 349. *Best* then explained, "In *A.P.*, we reviewed the abuse finding under the manifest weight standard, *as we do all findings made under the preponderance standard*." (Emphasis added.) *Id.* at 349-50. This court noted that many cases over a number of years had employed the abuse of discretion standard for abuse findings under the Domestic Violence Act. *Id.* at 350. This court explained, however, that the " '[m]ere repetition of a purported rule of law does not establish its validity.' " *Id.* (quoting *In re D.T.*, 212 Ill. 2d 347, 357 (2004)). Moreover, this court pointed out that those cases had ignored the statutory language setting forth a preponderance of the evidence standard. *Id.*

¶ 75    Here, we have the same situation. We have a history of the appellate court applying the abuse of discretion standard, while ignoring that the statute sets forth factors that must be proved by a preponderance of the evidence. Some cases even say, incorrectly, that the decision whether to grant a certificate of innocence is committed to the sound discretion of the trial court. See, *e.g.*, *Rudy v. People*, 2013 IL App (1st) 113449, ¶ 11. This is simply not true. If the petitioner proves his case by a preponderance of the evidence, the trial court has no discretion to deny the certificate. Moreover, as this court explained in *D.T.*, 212 Ill. 2d at 355, "sound discretion of the trial court" is *not* a standard of proof.

¶ 76    Some courts have been thrown off by the following sentence in section 2-702(a):

> "It is the intent of the General Assembly that the court, *in exercising its discretion as permitted by law regarding the weight and admissibility of evidence* submitted pursuant to this Section, shall, in the interest of justice, give due consideration to difficulties of proof caused by the passage of time, the death or unavailability of witnesses, the destruction of evidence or other factors not caused by such persons or those acting on their behalf." (Emphasis added.) 735 ILCS 5/2-702(a) (West 2020).

See, *e.g.*, *People v. Pollock*, 2014 IL App (3d) 120773, ¶ 27. This sentence does not *grant* the trial court discretion; it simply recognizes the traditional discretion that the court is "permitted by law" and then places a *limitation* on that discretion. This sentence is a limitation on trial court discretion because it requires the court to

weigh the evidence and determine its admissibility within specified parameters. Regardless, this sentence in no way changes the fact that a petitioner's burden of proof is preponderance of the evidence, and if he meets that burden, the court "shall" grant the certificate.

¶ 77 Abuse of discretion review would also be incompatible with the purposes and policies of the statute. This court has explained that abuse of discretion review is "the most deferential standard of review—next to no review at all—and is therefore traditionally reserved for decisions made by a trial judge in overseeing his or her courtroom or in maintaining the progress of a trial." *D.T*., 212 Ill. 2d at 356. An abuse of discretion occurs only where the trial court's ruling is arbitrary, fanciful, or so unreasonable that no reasonable person could take the trial court's view. *People v. Cross*, 2022 IL 127907, ¶ 24. The legislature made this specific finding in the statute:

> "The General Assembly finds and declares that innocent persons who have been wrongly convicted of crimes in Illinois and subsequently imprisoned have been *frustrated in seeking legal redress due to a variety of substantive and technical obstacles in the law* and that such persons should have an available avenue to obtain a finding of innocence so that they may obtain relief through a petition in the Court of Claims." (Emphasis added.) 735 ILCS 5/2-702(a) (West 2020).

That same section mandates that in, determining the weight and admissibility of evidence, the trial court must keep in mind that petitioners seeking certificates of innocence often face difficulties of proof. *Id.* It would be incompatible with this statutory scheme to then make trial court decisions denying certificates of innocence virtually unreviewable, with petitioners able to obtain relief only from the most arbitrary trial court decisions.

¶ 78 It is in the interests of judicial economy to decide this issue now. We do not need to allow a different petition for leave to appeal and go through full briefing and oral argument to determine what standard of review applies to factual findings made under the preponderance of the evidence standard. Because this court has clearly stated that we apply manifest weight review to *all* findings made under the preponderance of the evidence standard (*Best*, 223 Ill. 2d at 349-50), I would hold that manifest weight of the evidence is the proper standard of review.

II. Judicial Notice

¶ 80        I disagree with my colleagues that the trial court erred in taking judicial notice
of petitioner's testimony from the underlying criminal proceeding. Section 2-702(f)
provides:

> "(f) *In any hearing* seeking a certificate of innocence, the court may take
> judicial notice of prior sworn testimony or evidence admitted in the criminal
> proceedings related to the convictions which resulted in the alleged wrongful
> incarceration, if the petitioner was either represented by counsel at such prior
> proceedings or the right to counsel was knowingly waived." (Emphasis added.)
> 735 ILCS 5/2-702(f) (West 2020).

Applying this statute to petitioner's case is a straightforward exercise. Was this a
hearing seeking a certificate of innocence? Yes. Did the trial court take judicial
notice of prior sworn testimony admitted in the criminal proceedings related to the
convictions that led to the alleged wrongful incarceration? Yes.[1] Has petitioner
alleged that he was not represented by counsel in the criminal proceeding? No.
Thus, an application of the statute's plain language leads inevitably to the
conclusion that the trial court did not err in taking judicial notice of petitioner's
sworn testimony.

¶ 81        Petitioner argues that the court erred in taking judicial notice because the State
did not participate in the hearing and no party asked the court to take judicial notice
of his sworn testimony in the underlying proceeding. Thus, petitioner would read
section 2-702(f) to say:

> "In any *contested* hearing seeking a certificate of innocence, the court may, *if
> requested by a party*, take judicial notice of prior sworn testimony or evidence
> admitted in the criminal proceedings related to the convictions which resulted
> in the alleged wrongful incarceration, if the petitioner was either represented by
> counsel at such prior proceedings or the right to counsel was knowingly
> waived."

---

[1]The circuit court stated, "Most significant, on August 24, 1995, [Washington] *testified under oath* in front of Judge Bolan that he was slapped once in the face and the chair that he was sitting in was pushed." (Emphasis added.)

However, it is a cardinal principle of statutory construction that we may not depart from plain statutory language by reading into the statute exceptions, limitations, or conditions not expressed by the legislature. *McElwain v. Office of the Illinois Secretary of State*, 2015 IL 117170, ¶ 12. Any such limiting language is for the legislature, not this court.

¶ 82 Moreover, the limitation placed on the statute by petitioner is not consistent with how judicial notice works generally. Pursuant to Illinois Rule of Evidence 201, the trial court may take judicial notice "whether requested or not" (Ill. R. Evid. 201(c) (eff. Jan. 1, 2011)), and it may do so "at any stage of the proceeding" (Ill. R. Evid. 201(f) (eff. Jan. 1, 2011)). However, Rule 201 further provides that "[a] party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. In the absence of prior notification, the request may be made after judicial notice has been taken." Ill. R. Evid. 201(e) (eff. Jan. 1, 2011). Thus, the State argues that, while it was entirely appropriate for the trial court to take judicial notice of petitioner's testimony from his criminal case, it was required to give petitioner an opportunity to respond.

¶ 83 Here, the trial court took judicial notice of petitioner's testimony from his criminal case because it did not want "to rule in a vacuum." It is certainly plausible that section 2-702(f) exists so that trial courts do not have to do so. Subsection (f) appears to be a recognition by the legislature that the record of the criminal proceeding that led to the conviction at issue will generally be a relevant and proper consideration in a certificate of innocence proceeding. The certificate of innocence proceeding is intimately connected with the underlying criminal case. To obtain a certificate of innocence, the petitioner must prove by a preponderance of the evidence (1) that he was convicted of a felony and sentenced to prison *in the underlying criminal case*, (2) that his conviction was reversed or vacated and the indictment or information was dismissed or vacated *in the underlying criminal case*, (3) that he was innocent of the offense charged *in the underlying criminal case*, and (4) that the petitioner did not voluntarily bring about his or her own conviction *in the underlying criminal case*. Everything that the petitioner needs to prove is directly related to the underlying criminal case. Therefore, it is not the least bit surprising that the legislature provided that in any certificate of innocence proceeding the court may take judicial notice of the sworn testimony and evidence in the underlying criminal case. The majority reads a limitation into this statute not

expressed by the legislature when it states that the court may take judicial notice only of "factual assertions presented in the transcripts," such as "the fact that defendant testified." *Supra* ¶ 53. That is not what the statute says. The statute says that the trial court may take judicial notice of the *sworn testimony and evidence* submitted in the underlying criminal proceeding. However, it places a limitation on this right. The court may only judicially notice the prior sworn testimony and evidence from that proceeding if the petitioner was represented by counsel in that proceeding or had knowingly waived that right. One wonders why the legislature would be concerned with such a limitation if a court could only judicially notice matters such as "the fact that defendant testified."

¶ 84    In holding that the trial court erred in taking judicial notice, the majority does not adopt petitioner's argument. Rather, the majority raises an unbriefed and unargued issue *sua sponte* and reverses the trial court on that basis.[2] According to the majority, the court's credibility finding was in error because a trial court may not make a credibility determination based on a judicially noticed fact. *Supra* ¶ 53. The majority also argues that the trial court erred because a "credibility determination is not an adjudicative fact." *Supra* ¶ 52. But the trial court did not take judicial notice of a credibility determination. The trial court made a credibility determination in this case *after* taking judicial notice of something that the statute specifically allowed it to judicially notice: petitioner's sworn testimony in the underlying case. The majority does not explain why a fact finder may not make a credibility determination based on a judicially noticed fact. If the majority is correct, that would mean that, if the State *had* participated in the hearing and asked the trial court to take judicial notice of petitioner's testimony in the underlying criminal proceeding, the trial court would not have been entitled to make a credibility finding based on the differences between his testimony in the two

---

[2]Petitioner's argument on judicial notice covered a little more than one page in his brief. He merely argued that it was error for the court to take judicial notice of the testimony in his criminal case because no party had requested it to. Similarly, with respect to the credibility finding, petitioner's argument was that the court erred in discounting his credibility when no party had challenged it. The State responded that section 2-702(f) clearly allowed the trial court to take judicial notice of the testimony in the underlying case but that the trial court had erred in failing to allow petitioner an opportunity to respond to the discrepancies it noted between his testimony in the two proceedings. Petitioner did not mention the issue in his reply brief, except to note that, if this court did not reverse outright, he agreed with the State that he was entitled to a remand so that he could address the discrepancies in his testimony.

proceedings. Or assume that, in a different certificate of innocence proceeding, the petitioner's innocence is a hotly contested issue and the petitioner testifies in a way that flatly contradicts much of the testimony and evidence in the underlying criminal trial. The State then asks the court to take judicial notice of that testimony and evidence pursuant to section 2-702(f). It cannot be the case that the court is precluded from considering those contradictions in assessing the petitioner's credibility.

¶ 85    The majority cites three cases in support of the proposition that a court may not make a credibility determination based on judicially noticed facts. Not one of the cases holds that. In *People v. Hood*, 2021 IL App (1st) 162964, ¶ 32, the appellate court's position was that a trial court may not take judicial notice under section 2-702(f) unless requested to by the parties. The court believed that the purpose of this section was to address foundational issues related to the admissibility of prior sworn testimony and that it did not allow the trial court to take judicial notice *sua sponte*. *Id.* The other two cases cited by the majority do not involve the certificate of innocence statute and therefore have no bearing on the scope of judicial notice under section 2-702(f), Moreover, they do not stand for the proposition that the majority claims they do. *People v. Crawford*, 2013 IL App (1st) 100310, concerned when an *appellate court* may consider scientific evidence outside the existing record in evaluating a trial court's ruling involving scientific evidence. The defendant requested that the appellate court take judicial notice of the pretrial deposition of Donald Parker, the administrator of the Illinois DNA offender database, in an unrelated criminal case. *Id.* ¶ 124. Parker had testified in that deposition that a match across less than 13 loci should not be considered a DNA match. See *People v. Wright*, 2012 IL App (1st) 073106, ¶ 53. Citing the principle that judicial notice of the general acceptance of scientific tests is inappropriate when there is not a consensus on that issue, the appellate court held that it would not take judicial notice of Parker's deposition testimony because it was not undisputed. *Crawford*, 2013 IL App (1st) 100310, ¶ 124. It is not clear what this has to do with the issue before us or with a trial court's ability to make a credibility determination after judicially noticing a fact. In *People v. Rubalcava*, 2013 IL App (2d) 120396, the defendant was charged with unlawful contact with street gang members. The defendant had associated with an individual named Antonio Delgadillo, and the principal issue at the defendant's trial was whether Delgadillo was a gang member. *Id*. ¶¶ 10-16. The State asked the trial court to take judicial

notice of a judicial finding in an unrelated case that Delgadillo was a gang member. *Id*. ¶ 16. The defendant's attorney stated that he did not object. *Id*. This led to a disagreement over whether, by stipulating that the court could take judicial notice of the trial court's finding in the other case, the defendant also stipulated to allowing the court to consider the evidence in the other case. *Id.* ¶¶ 28-29. The appellate court ultimately concluded that, although the trial court could take judicial notice of the finding in the memorandum decision, it could not take judicial notice of the evidence summarized in the decision, which was provided by nonparty witnesses in an unrelated case. *Id*. ¶ 34. Again, that has nothing to do with the issue before us. Here, the statute specifically *allows* the court to take judicial notice of the evidence in the underlying case, and that case is not unrelated. The certificate of innocence proceeding is concerned with determining whether an innocent petitioner was wrongfully convicted in the underlying criminal case. Neither *Crawford* nor *Rubalcava* is relevant to the issue before us, and neither one says that a court may not make a credibility finding after judicially noticing a fact.

¶ 86 In sum, I disagree with the majority that the trial court erred in taking judicial notice of petitioner's sworn testimony from the underlying criminal case. I agree with the court's observation in *People v. Simon*, 2017 IL App (1st) 152173, ¶ 24, that the statute does not contain well-defined instructions on how to proceed in cases in which the State intervenes but fails to object to the proceedings or offer any evidence. In the absence of any such instructions, however, all we can do is apply the plain language of the statute, and the statute says that "*[i]n any hearing seeking a certificate of innocence*," the court may take judicial notice of sworn testimony from the underlying criminal proceeding. (Emphasis added.) 720 ILCS 5/2-702(f) (West 2020). The majority has offered no compelling reasons for disregarding this plain statutory language, and I therefore cannot agree with its conclusion that the court erred in taking judicial notice of petitioner's sworn testimony in the underlying criminal proceeding.

¶ 87 III. The Trial Court's Decision Was Against the
Manifest Weight of the Evidence

¶ 88 The State agrees that section 2-702(f) allowed the trial court to take judicial notice of petitioner's testimony in the underlying case. However, the State argues

- 33 -

that the trial court improperly denied petitioner an opportunity to address the inconsistencies that the court found between his testimony in the two proceedings. The State notes that the trial court's rejection of petitioner's petition turned solely on its assessment of petitioner's credibility in light of the record of the prior proceeding. The State asks that we remand the matter for a new hearing at which petitioner can address the inconsistencies the trial court noted. The State also acknowledges that the trial court failed to consider the totality of the circumstances when it evaluated the petition and argues that it should be ordered to do so on remand.

¶ 89     I do not believe that a remand for a new hearing is necessary, as I would hold that the trial court's decision was against the manifest weight of the evidence. A judgment is against the manifest weight of the evidence when the opposite conclusion is clearly apparent. *In re Parentage of J.W.*, 2013 IL 114817, ¶ 55. Here, the evidence was overwhelming that petitioner did not voluntarily bring about his own conviction. As the appellate court noted, this is not an issue of whether petitioner proved by a preponderance of the evidence that he is innocent. 2021 IL App (1st) 163024, ¶ 27. After the State moved to vacate petitioner's conviction and dismiss the charges, it did not oppose the certificate of innocence. And the circuit court based its denial of the certificate of innocence solely on the grounds that petitioner failed to prove by a preponderance of the evidence that he did not voluntarily bring about his own conviction. This raises the question why petitioner would confess to a crime he did not commit. Petitioner's stated reason was that the detectives who questioned him coerced a false confession from him.

¶ 90     As noted by the majority, petitioner presented substantial, unrebutted evidence that his confession was coerced by detectives who had been accused of coercing confessions in many other cases.[3] *Supra* ¶¶ 5-19, 54-56. I do not believe that the minor discrepancies that the trial court noted between petitioner's testimony in the

---

[3]At certain points in its analysis, the majority treats the coercion of petitioner's confession as a matter of established historical fact. See, *e.g.*, *supra* ¶ 1 ("Petitioner Wayne Washington pleaded guilty to first degree murder after Chicago police officers coerced a false confession from him.); *supra* ¶ 3 ("They also subjected him to psychological abuse."). It is important to remember that these are allegations and that no one but petitioner and the detectives knows for certain what happened in the interrogation room. However, I agree with my colleagues that petitioner established his case by a preponderance of the evidence.

two proceedings were sufficient to undermine petitioner's case. The first of the discrepancies went to the amount of the abuse, not to whether petitioner was abused. And it is not clear to what extent the second is even a discrepancy. If petitioner made up a statement about his involvement after hearing what other people said, he still made up the statement. Moreover, if petitioner is innocent but told a story that was consistent with what everyone else said, then he must have heard that information somewhere. Regardless, however, I ultimately agree with Presiding Justice Walker's position that the trial court's decision was against the manifest weight of the evidence and that the minor inconsistencies that the trial court noted did not overcome the significant evidence of police coercion. 2021 IL App (1st) 163024, ¶ 43 (Walker, P.J., dissenting) This is particularly true where a full two decades had passed between petitioner's statements, and the trial court is supposed to weigh the evidence with an understanding of the difficulties caused by the passage of time. See 735 ILCS 5/2-702(a) (West 2020). I agree with the State that in rejecting petitioner's petition the trial court failed to consider the totality of the circumstances. Because I believe that this is a case where the opposite result is clearly apparent, I see no need to remand for further proceedings. I agree with my colleagues that this court should reverse the decisions of the lower courts and award petitioner a certificate of innocence. I therefore concur in the judgment.

¶ 91    CHIEF JUSTICE THEIS and JUSTICE OVERSTREET join in this special concurrence.